United States District Court
Southern District of Texas
**ENTERED**
October 19, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA CAO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-321 |
| | § | |
| BSI FINANCIAL SERVICES, INC., | § | |
| CHRISTIANA TRUST, WILMINGTON | § | |
| SAVINGS FUND SOCIETY, STANWICH | § | |
| MORTGAGE LOAN TRUST SERIES | § | |
| 2012-10 and STANWICH MORTGAGE | § | |
| ACQUISITION CO., INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant First American Title Insurance Company's ("First American") Motion to Dismiss (Doc. 19), Plaintiff Angela Cao's ("Plaintiff") Motion to Remand (Doc. 31), First American's Motion to Strike Joinder (Doc. 34), and Defendants BSI Financial Services, Inc. ("BSI"), Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust Series 2012-10 ("Trust"), and Carrington Mortgage Services LLC's ("CMS") Motion to Strike (Doc. 35).  The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion to remand be **DENIED**, First American's motion to strike be **GRANTED**, Defendants BSI,

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 6, Ord. Dated Feb. 16, 2017.

Trust, and CMS's motion to strike be **GRANTED**, and that First American's motion to dismiss be **GRANTED**.

## I.  Case Background

Plaintiff filed this action in the 333rd District Court of Harris County, Texas, requesting an injunction to halt the foreclosure of her property and alleging claims of usury and wrongful foreclosure.[2]  After removal, Plaintiff amended her complaint to assert causes of action for fraud and misrepresentation, statutory fraud under Texas Business and Commerce Code § 27.01, slander of title and cloud on title, violation of Texas Civil Practice and Remedies Code § 12.002, negligence per se, gross negligence per se, aiding and abetting, breach of contract, and unfair debt collection practices.[3]

## A.  Factual Background

Joyce Love ("Love") purchased 4003 Feagan Street, Houston, Texas (the "Property")[4] from Stiffel-Schwab Builders, LLC for $418,000 on January 3, 2006.[5]  Love obtained two loans for the

---

[2]   See Doc. 1-1, Ex. 1 to Defs.' Not. of Removal, Pl.'s Orig. Pet. pp. 1-12.

[3]   See Doc. 15, Pl.'s 1st Am. Compl.

[4]   The Property is described as follows:

Lot One (1), in Block One (1), of VILLAS ON FEAGAN, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Film Code No. 556176, of the Map Records of Harris County, Texas.

See Doc. 15, Pl.'s 1st Am. Compl. p. 3.

[5]   See id. p. 2.

2

property; one for $335,400 and the other for $83,600.[6]  Love did
not live on the property or make any mortgage payments.[7]  John W.
Follis, a substitute trustee acting for the mortgagee, the Bank of
New York as Trustee for the Certificate Holders CWABS, Inc. Asset
Backed Certificates, Series 2006-5 ("the Bank of New York"), non-
judicially foreclosed upon the property on July 4, 2006.[8]  A
substitute trustee's deed was executed on that date granting the
property to the Bank of New York.[9]

On February 9, 2007, Plaintiff purchased the Property from the
Bank of New York for $300,000.[10]  The closing took place on that
date at United Title of Texas, with escrow agent Jason Vasek
("Vasek").[11]  Plaintiff paid a cash down payment of $60,000 and
received a loan of $240,000 from New Century Mortgage Corporation
with a thirty-year term and interest rate of 6.575%.[12]  The loan was
secured with a deed of trust, the Bank of New York conveyed a
special warranty deed to Plaintiff, and Plaintiff obtained a title
insurance policy from First American.[13]  Plaintiff alleges that

---

[6]        See id. p. 3.

[7]        See id.

[8]        See id.

[9]        See id.

[10]       See id.

[11]       See id.

[12]       See id.

[13]       See id. pp. 3-4.

at a later date, she learned that the Property was "riddled with unreleased liens, notes and anomalies in title" and that the substitute trustee's deed was "defective," meaning that "it is possible the Plaintiff did not receive fee title to said property."[14]  In the process of closing on the property, Plaintiff alleges that Vasek did not properly check the title and that some of the documents Plaintiff signed were notarized late by Vasek, rendering them invalid.[15]

BSI and Plaintiff signed a Modification Agreement on May 1, 2009, recalculating the payments to account for two years of property taxes that the lender had paid.[16]  The Modification Agreement also lowered Plaintiff's interest rate to 5.750%.[17]

BSI informed Plaintiff on January 7, 2011, that her default was cured and that she was current on her payments.[18]  BSI and CMS have both serviced Plaintiff's mortgage.[19]  After this date, Plaintiff alleges that:

> BSI and its predecessor CMS continued engaging in a pattern and practice of declaring Plaintiff in default on her mortgage loan, incorrectly alleging that mortgage payments had not been made, returning payments, assessing

---

[14]   Id. p. 5.

[15]   See id.

[16]   See id. p. 4.

[17]   See id.

[18]   See id.

[19]   See id.  It is unclear from Plaintiff's complaint which defendant serviced her mortgage at various times.  See id. pp. 4-5.

late fees that were in amounts not provided for in loan
documents, placing insurance on the subject property
despite the fact that property insurance was already
insuring the property, purchasing mortgage protection
insurance without Plaintiff's knowledge or approval,
charging Plaintiff for attorney fees that were not
entitled to receive, charging other fees that were not
provided for in the loan agreements.[20]

Plaintiff states that "BSI and CMS further engaged in the practice of wrongfully declaring Plaintiff in default on her mortgage loan and sending her notices of default and acceleration."[21]   Plaintiff was sent a notice from BSI in December 2016 for a non-judicial foreclosure.[22]

## B.   Procedural Background

On December 28, 2016, Plaintiff filed this action in state court, and BSI and Trust removed it to this court on February 1, 2017.[23]   On March 3, 2017, Plaintiff sought to remand this action to state court on the ground that it was untimely removed, but later withdrew that motion after the court required that Plaintiff distinguish the present facts from the holding in Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).[24]   A scheduling order provided that amended pleadings be filed and new

---

[20]     Id.

[21]     Id. p. 5.

[22]     See id.

[23]     See Doc. 1, Defs. BSI and Trust's Not. of Removal.

[24]     See Doc. 10, Pl.'s 1st Mot. to Remand; Doc. 11, Min. Entry Ord. Dated Mar. 9, 2017; Doc. 13, Pl.'s Not. of Withdrawal of Mot. to Remand.

parties be joined by May 12, 2017.[25]  Discovery was to end on August 18, 2017.[26]

On May 12, 2017, Plaintiff filed an amended complaint, without leave of court adding First American, CMS, and Vasek as defendants.[27]  Vasek was alleged to be a citizen of Texas.[28]  On July 27, 2017, Defendant First American moved for an extension of the scheduling order on the grounds that Plaintiff had failed to make her initial disclosures and had failed to serve her expert disclosures on it in accordance with the scheduling order.[29]  First American also filed a motion to compel Plaintiff's initial disclosures.[30]  On August 11, 2017, Plaintiff filed a second motion to remand, contending that the joinder of Vasek defeated the court's diversity jurisdiction.[31]   Defendants filed motions to strike the claims against Vasek on September 12, 2017, and September 15, 2017.[32]

## II.  Motion to Remand and Motions to Strike

---

[25]     See Doc. 12, Sched. Order Dated Mar. 10, 2017.

[26]     Id.

[27]     See Doc. 15, Pl.'s 1st Am. Compl. p. 2.

[28]     See id.

[29]     See Doc. 26, Def. First American's Mot. to Modify Scheduling Ord.

[30]     See Doc. 27, Def. First American's Mot. to Compel.

[31]     See Doc. 31, Pl.'s 2d Mot. to Remand pp. 2-7.

[32]     See Doc. 34, Def. First American's Mot. to Strike Joinder of Vasek & Response to Mot. to Remand; Doc. 35, Defs. BSI, Trust, and CMS's Mot. to Strike & Response to Pl.'s Mot. to Remand.

The jurisdictional statutes allow removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A defendant may remove a case in which the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. See 28 U.S.C. §§ 1332, 1441. Complete diversity refers to the requirement that the citizenship of each of the plaintiffs must be different from that of each of the defendants. Stafford v. Mobil Oil Corp., 945 F.2d 803, 804 (5th Cir. 1991).

Defendants complain that Plaintiff failed to seek leave of court before filing the amended pleading that added Vasek. However, the court's scheduling order required leave of court only after the expiration of the deadline; amendments prior to the deadline did not need to be filed concurrently with a motion for leave to amend.[33] The court turns to the merits of Defendants' motions to strike.

When a plaintiff seeks to add a non-diverse party after removal and the joinder will destroy jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "The decision between these two options rests squarely within the discretion of the district court." Richardson v. Wal-Mart Stores Tex., LLC, 192 F. Supp.3d

---

[33]   See Doc. 12, Sched. Order Dated Mar. 10, 2017 ("Any amendments after this date must be accompanied by a motion.").

719, 726 (S.D. Tex. 2016)(quoting <u>Martinez v. Holzknecht</u>, 701 F. Supp.2d 886, 889 (S.D. Tex. 2010)).  When examining an amended pleading adding a nondiverse defendant, the court should look at it "more closely than an ordinary amendment." <u>Moore v. Manns</u>, 732 F.3d 454, 456 (5th Cir. 2013)(citation omitted).  The court should make the decision based on the analysis of several factors, including: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction;" (2) whether the plaintiff "has been dilatory in asking for amendment;" (3) whether the plaintiff "will be significantly injured if amendment is not allowed;" and (4) "any other factors bearing on the equities." <u>Id.</u> (quoting <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir. 1987)(also acknowledging that this analysis is the correct legal standard for deciding whether joinder of a non-diverse party should be allowed after removal).

**A.   <u>Purpose of the Amendment</u>**

As to the first factor, "courts take into account considerations such as whether the plaintiff knew or should have known the identity of the nondiverse defendant when the state court suit was filed, whether the plaintiff states a valid claim against the nondiverse defendant, and the timing of the amendment." <u>Agyei v. Endurance Power Prods., Inc.</u>, 198 F. Supp.3d 764, 770 (S.D. Tex. 2016)(citing <u>Richardson v. Wal-Mart Stores Texas, LLC</u>, 192 F. Supp.3d 719, 725-26 (S.D. Tex. 2016); <u>Gallegos v. Safeco Ins. Co.</u>

of Ind., No. 09-CV-2777, 2009 WL 4730570, at *3-4 (S.D. Tex. Dec. 7, 2009)(unpublished)).

In her first amended complaint, Plaintiff alleges that Vasek, in his capacity as an escrow agent, did not adequately check Plaintiff's title and made misrepresentations at the closing on February 9, 2007, that she was receiving a clear title to the property.  Defendants state that Plaintiff brought a prior state court action to stop foreclosure on this same property in 2012 and litigated it for three years before it was dismissed on the defendants' motion in 2015.[34]  Defendants argue that Plaintiff therefore knew or should have known of Vasek's identity at the time of filing her second petition in state court.  The court has not been supplied with the state court pleadings in the earlier action and cannot conclude that the alleged misrepresentations made at the 2007 closing were an issue that should have been discovered in that case.

Here, the amended complaint states the following causes of action against all Defendants: fraud and misrepresentation, statutory fraud, slander of title and cloud on title to real estate, violation of Texas Civil Practice and Remedies Code § 12.002, negligence per se, gross negligence per se, and aiding and

---

[34]     Attached to BSI, Trust, and CMS's motion to strike is the docket sheet in an earlier case Plaintiff filed on March 16, 2012, related to the Property at dispute in this case, demonstrating that the case was litigated for over three years.  See Doc. 35-1, Ex. A to BSI, Trust, and CMS's Motion to Strike, Docket Sheet from Cao v. Protium Master Grantor Trust pp. 1-8.

abetting.  Specific to Vasek, Plaintiff alleges a cause of action for fraud and misrepresentation.  Defendants contend that these claims would be barred by the applicable statute of limitations and therefore do not meet the requirement of a "valid" claim against a non-diverse defendant.  The court agrees.

Under Texas law, common law fraud and statutory fraud both fall under a four-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).  The statue of limitations for a fraud claim "begins to run when the fraud is perpetrated, or, if the fraud is concealed, from the time it is discovered or could have been discovered by the exercise of reasonable diligence."  Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 517 (Tex. 1988).  The discovery rule tolls the statute of limitations in cases where an injury is "inherently undiscoverable."  Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996).

A plaintiff has the responsibility of pleading the discovery rule in response to the defendant's assertion of the statute of limitations as an affirmative defense.  Woods, 769 S.W.2d at 517-18 ("A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance."); see also KPMG Peat Marwick v. Harrison Cty. Housing Finance Corp., 988 S.W.2d 746, 748 (Tex. 1999)("the defendant must . . . negate the discovery

rule, if it applies and has been pleaded or otherwise raised")(emphasis added); R&L Inv. Prop., LLC v. Hamm, Civil Action No. 3:10-CV-00864-M, 2011 WL 2462102, at *3 (N.D. Tex. 2011)(unpublished).

In his answer filed on July 24, 2017, Vasek asserted the statute of limitations as an affirmative defense to all claims.[35] Plaintiff made no mention of the discovery rule in her complaint or motion to remand and has failed to respond to the motions to strike. In her motion to remand, Plaintiff merely alleges in a conclusory fashion that Defendants concealed their fraudulent misrepresentations and omissions of material fact and that she did not learn about them until she hired an expert in this case. However, Plaintiff has put forth no factual explanation why her injuries from Vasek's alleged fraudulent misrepresentations in February 2007 were inherently undiscoverable before May 2017 or could not have been discovered by the exercise of reasonable diligence.

As to Plaintiff's more general claims against all defendants, which are presumed to include Vasek, these also would be barred by the applicable statute of limitations. For example, the statute of limitations for negligence causes of action in Texas is two years. See Tex. Civ. Prac. & Rem. Code § 16.003. Plaintiff has failed to allege any facts supporting the application of the discovery rule,

---

[35]     See Doc. 25, Ans. of Jason Vasek p. 8.

which is her burden to do.  Without the application of the discovery rule, Plaintiff's claims for negligence per se, negligent misrepresentation and gross negligence against Vasek arising from the February 2007 closing are barred by the statute of limitations.

Plaintiff's claim under the Texas Civil Practice and Remedies Code § 12.002 alleges fraud, namely, the recording of a fraudulent document.  The court finds that this claim would fall under the four-year statute of limitations for fraud claims and would be time barred.[36]

Slander of title claims are governed by a two-year statute of limitations.  See Tex. Civ. Prac. & Rem. Code § 16.003; Poag v. Flories, 317 S.W.3d 820, 826 (Tex. App.–Fort Worth 2010, pet. denied)("The two-year statute of limitations governs a claim for slander of title."); Hill v. Heritage Resources, 964 S.W.2d 89, 116 (Tex. App.–El Paso, pet. denied)("Actions based upon . . . slander of title are . . . controlled by a two-year statute of limitations.").  The only allegations made specifically to Vasek are that he made misrepresentations in the course of closing on Plaintiff's property in 2007.  For the reasons discussed above, given the absence of facts supporting the application of the discovery rule, these claims would clearly be time barred.

Plaintiff also makes a claim for cloud on title to real

---

[36]     It is unclear whether Plaintiff can allege a Section 12.002 claim against Vasek.  As alleged, this claim did not focus on Vasek's conduct; rather, Plaintiff alleged that BSI recorded a fraudulent document in 2016.

estate, also known as a suit to quiet title.  The elements of a suit to quiet title that a plaintiff must demonstrate include: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable."  U.S. Nat'l Bank Ass'n v. Johnson, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.–Houston 2011, no pet.)(unpublished); Vernon v. Perrien, 390 S.W.3d 47, 61 (Tex. App.–El Paso 2012, pet. denied).  Here, there is no allegation by Plaintiff that Vasek is claiming any type of title to Plaintiff's property.  The court cannot conclude that this would be a valid claim against Vasek.

Plaintiff generally asserts an aiding and abetting claim against all Defendants for commission of the named torts.  Texas law has recognized a claim for aiding and abetting a breach of fiduciary duty.  Floyd v. Hefner, 556 F. Supp.2d 617, 654-55 (S.D. Tex. 2008).  However, the law is still unclear whether aiding and abetting other intentional torts, such as fraud, is a recognized claim under Texas law.  See In re Houston Reg'l Sports Network, L.P., 547 B.R. 717, 758-59 (Bankr. S.D. Tex. 2016)(positing that Texas law would recognize a claim for aiding and abetting fraud); Juhl v. Airington, 936 S.W.2d 640, 643-45 (Tex. 1996); New York Pizzeria, Inc. v. Syal, 56 F. Supp.3d 875, 883-84 (S.D. Tex. 2014)(finding that Texas law would not allow for aiding and abetting claims in the context of competition and theft-related

13

torts); Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573 (Tex. 2001). However, even if Texas law did recognize such a claim, the statute of limitations would likely be the same as the underlying tort. See Thomas v. Barton Lodge II, Ltd., 174 F.3d 636, 647 (5th Cir. 1999). Therefore, any claim for aiding and abetting fraud or another underlying tort in this case against Vasek would face the same statute of limitations defect as the underlying claims. As the court has found that Plaintiff's other claims are likely to fail as to Vasek, then the aiding and abetting claim would not be able to stand on its own. W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC, 437 S.W.3d 917, 921 (Tex. App.–Dallas 2014, pet. denied).

Because Plaintiff's claims against Vasek are likely invalid, this militates in favor of a conclusion that the amendment was to defeat federal jurisdiction.

## B.  **Whether Plaintiff Was Dilatory**

As to the timing of the amendment of Plaintiff's complaint, the court must look at "whether the *sequence* of events gives rise to an inference regarding [a plaintiff's] purpose in making the motion." WNWSR, LLC v. Chesapeake Energy Corp., No. 4:15-CV-1860, 2015 WL 7357840, at *3 n.4 (S.D. Tex. Nov. 19, 2015)(unpublished).

When deciding the second factor, "courts often look to the amount of time between the original state court action and the request to amend, and the time between removal and the request."

14

Richardson, 192 F. Supp.3d at 726 (quoting Lowe v. Singh, H-10-1811, 2010 WL 3359525, at *3 (S.D. Tex. Aug. 23, 2010)(unpublished)).   Courts have found, in cases where the amendment occurs after removal and adds a non-diverse defendant that "a delay in making the request to amend of two months after filing the original complaint or thirty days after the notice of removal has been found dilatory." Id. (citing Gallegos, 2009 WL 4730570, at *4; Wein v. Liberty Lloyds of Tex. Ins. Co., No. A-15-CCA-19-SS, 2015 WL 1275915, at *6 (W.D. Tex. Mar. 19, 2015)(unpublished)).

Plaintiff filed her petition in state court on December 28, 2016.  This case was removed on February 1, 2017.  On May 12, 2017, Plaintiff amended her complaint adding Vasek over three months after removal and five months after filing the original petition. Courts have considered lesser delays as dilatory, especially when a plaintiff knew of the defendant's actions when originally filing the complaint.  Gallegos, 2009 WL 4730570, at *4 (citing cases); Irigoyen, 2004 WL 398553, at *4.  The court therefore finds that Plaintiff was dilatory in adding Vasek as a party.

**C.  <u>Injury to Plaintiff</u>**

In regards to the third factor, courts analyze "whether a plaintiff can be afforded complete relief in the absence of the amendment," looking at "whether the already named diverse defendant would be unable to satisfy a future judgment." Richardson, 192 F.

Supp.3d at 727 (quoting <u>Lowe</u>, 2010 WL 3359525, at *3; <u>Gallegos</u>, 2009 WL 4730570, at *4). Here, there is nothing indicating that the other diverse defendants would not be able to satisfy a judgment or that Plaintiff would not be able to seek complete relief without Vasek.

**D.   <u>Any Other Factors</u>**

The fourth factor allows courts to consider "any other factors bearing on the equities." <u>Richardson</u>, 192 F. Supp.3d at 727. Plaintiff's joinder of Vasek would deny Defendants of the opportunity to litigate in federal court over claims that are likely invalid for a multitude of reasons.

Overall, all these factors weigh in favor of denying the joinder of Vasek. Defendants' motions to strike the claims against Vasek should be **GRANTED**. Plaintiff's motion to remand should be **DENIED**.

### III. Motion to Dismiss

**A.   <u>Legal Standard</u>**

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

16

When reviewing a Rule 12(b)(6) motion, the court must be mindful that a complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545. Under Rule 9(b), a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b); <u>United States ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 185 (5th Cir. 2009). Pleadings alleging fraud require "simple, concise, and direct" allegations that make relief plausible under the standard of Twombly. <u>Id.</u>

**B.  Analysis**

First American argues that Plaintiff's claims against it should be dismissed, citing the relevant statute of limitations and contending that Plaintiff's allegations are insufficient to state a claim. Plaintiff has not filed a response to this motion.

**1.  Fraud and Misrepresentation**

To state a prima facie case for fraud, a plaintiff must establish:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

<u>In re FirstMerit Bank, N.A.</u>, 52 S.W.3d 749, 758 (Tex. 2001). Fraud claims have a four-year statute of limitations subject to the discovery rule in cases where an injury is inherently undiscoverable. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); <u>Computer Assocs. Int'l</u>, 918 S.W.2d at 456. A plaintiff must assert the discovery rule in order to avail herself of it in response to a statute of limitations defense. <u>Woods</u>, 769 S.W.2d at 517-18; <u>KPMG Peat Marwick</u>, 988 S.W.2d at 748. The statute of limitations

18

for negligent misrepresentation claims is two years. <u>Kansa</u>
<u>Reinsurance Co.</u>, 20 F.3d at 1371-72.

In cases where a plaintiff asserts the same allegations for
both a fraud and negligent misrepresentation claim, the Rule 9(b)
heightened pleadings standards apply to both claims. <u>See</u> <u>Carey v.</u>
<u>Fargo</u>, No. H-15-1666, 2016 WL 4246997, at *2 (S.D. Tex. Aug. 11,
2016)(unpublished)("Where, as here, the factual allegations
underlying a fraud claim and negligent misrepresentation claim are
the same, the heightened pleading standards of Rule 9(b) also apply
to the negligent misrepresentation claim")(citing <u>Benchmark Elecs.,</u>
<u>Inc. v. J.M. Huber Corp.</u>, 343 F.3d 719, 723 (5th Cir.
2003)("Although Rule 9(b) by its terms does not apply to negligent
misrepresentation claims, this court has applied the heightened
pleading requirements when the parties have not urged a separate
focus on the negligent misrepresentation claims.")).  Therefore,
with respect to both the fraud and negligent misrepresentation
claims, Plaintiff must allege the "who, what, when, where, and how"
of the alleged misrepresentations. <u>Williams v. WMX Techs., Inc.</u>,
112 F.3d 175, 179 (5th Cir. 1997).

In her complaint, Plaintiff alleges that misrepresentations
were made at the time of closing that she was receiving good title
to the property and that the closing was correctly executed.
Plaintiff does not include specific allegations about what
misrepresentations First American made to her, or what the nature

of her interaction was with First American other than First American issued her title policy. Additionally, there is a statute of limitations issue with respect to these claims as none of Plaintiff's allegations with respect to First American are more recent than 2007. Therefore, Plaintiff's claims for fraud and negligent misrepresentation against First American should be dismissed.

### 2.  Statutory Fraud

Texas Business and Commerce Code § 27.01 establishes a cause of action for statutory fraud in real estate or stock transactions. Tex. Bus. & Com. Code § 27.01(a). Under this section, fraud occurs in a real estate transaction when a false representation of material fact or a false promise is made to induce someone to enter into the contract and it is relied upon. Tex. Bus. & Com. Code § 27.01(a). This section "only look[s] at the time up to and including the execution of the contract for the fulfillment of any of their elements." In re Skyport Global Commc'ns, Inc., Br. No. 08-36737, 2011 WL 111427, at *49 (Bankr. S.D. Tex. 2011)(unpublished). Statutory fraud is also subject to the Rule 9(b) heightened standard. See Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338-39 (5th Cir. 2008)("state-law fraud claims are subject to the pleading requirements of Rule 9(b)."); In re Enron Corp. Securities, Derivative & Erisa Litigation, 762 F. Supp.2d 942, 958 (S.D. Tex. Dec. 8, 2010)(unpublished)("Rule 9(b) also

applies to statutory fraud claims arising under Tex. Bus. & Comm. Code § 27.01.").

"Section 27.01 only applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock." Sam v. Wells Fargo Bank, N.A., Civ. Action No. 4:16-CV-03194, 2016 WL 4470111, at *8 (S.D. Tex. July 15, 2016)(slip op.)(quoting James v. Wells Fargo Bank, N.A., Civ. Action No. H-14-0449, 2014 WL 2123060, at *4 (S.D. Tex. May 21, 2014)(unpublished)). "A loan transaction, even if secured by land, is not considered to come under the statute." Dorsey, 540 F.3d at 343 (5th Cir. 2008)(quoting Burleson State Bank v. Plunkett, 27 S.W.3d 605, 611 (Tex. App.–Waco 2000, pet. denied)).

In this case, there was no contract between First American for the sale of land or stock between the parties, only a title insurance contract. Additionally, as discussed in more detail above, Plaintiff's statutory fraud claim would be barred by the applicable statute of limitations and fails to meet the Rule 9(b) heightened pleading standard. Plaintiff's claim for statutory fraud should be dismissed for failure to state a claim.

### 3.  Slander of Title and Cloud on Title

Under Texas law, slander of title contains the following elements that a plaintiff must prove: "(1) uttering and publishing of disparaging words; (2) falsity; (3) malice; (4) special damages; (5) possession of an estate or interest in the property disparaged;

and (6) the loss of a specific sale." <u>Wise v. Conklin</u>, No. 01-13-00840-CV, 2015 WL 1778612, at *3 (Tex. App.–Houston [1st Dist.] Apr. 16, 2015, no pet.)(unpublished)(citing <u>Williams v. Jennings</u>, 755 S.W.2d 874, 879 (Tex. App.–Houston [14th Dist.] 1988, writ denied)).

Plaintiff alleges that Defendants committed a slander of title by posting an "illegal and defective" Notice of Substitute Trustee Sale.[37]  These allegations relate to the posting of the property for foreclosure in 2016 by BSI.  Plaintiff does not allege that First American was involved in the posting of the Property for foreclosure or published false words about her with malice that resulted in the loss of the sale of her property.  Again, the only allegations relevant to First American are that it was the underwriter for her title insurance policy in 2007.  Plaintiff has failed to state a claim for slander of title against First American.

As to Plaintiff's claim to remove cloud on title, as explained above, the elements of this cause of action include: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." <u>U.S. Nat'l Bank Ass'n</u>, 2011 WL 6938507, at *3; <u>Vernon</u>, 390 S.W.3d at 61.  There is a cloud on title when there is a claim or encumbrance, that, if found to be valid, would impact the owner's title to the property.

---

[37]    <u>See</u> Doc. 15, Pl.'s 1st Am. Compl. p. 7.

<u>Vernon</u>, 390 S.W.3d at 61.

There is no allegation by Plaintiff that First American is claiming an interest in her property that affects her title to the property.  The court finds that this claim should also be dismissed against First American.

### 4.  Texas Civil Practice and Remedies Code § 12.002, Negligence Per Se, and Gross Negligence Per Se

Under Texas Civil Practice and Remedies Code § 12.002, a plaintiff must show that:

> [T]he defendant (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish.

<u>Golden v. Wells Fargo Bank, N.A.</u>, 557 F. App'x 323, 326-27 (5th Cir. 2014)(unpublished)(quoting <u>Henning v. OneWest Bank FSB</u>, 405 S.W.3d 950, 954 (Tex. App.–Dallas 2013, no pet.); Tex. Civ. Prac. & Rem. Code § 12.002(a)).

Plaintiff alleges that Defendants violated this statute by recording the Notice of Substitute Trustee's Sale, which Plaintiff alleges was fraudulent.  However, there is no factual allegation that First American was involved in the false recording of this document.  Without a violation of Section 12.002, Plaintiff has not stated a claim for negligence per se or gross negligence based on

a violation of this statute.[38]   Therefore, these claims should be
dismissed.

### 5.   Breach of Contract

A plaintiff must prove the following elements for a successful
breach of contract claim under Texas law: (1) the existence of a
valid contract; (2) performance or tendered performance by the
plaintiff; (3) breach of the contract by the defendant; and (4)
damages sustained by the plaintiff as a result of the breach.
Mullins v. TestAmerica Inc., 564 F.3d 386, 418 (5th Cir.
2009)(citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex.
App.–Houston [14[th] Dist.] 2005, pet. denied)).  Breach of contract
claims are subject to a four-year statute of limitations under
Texas law, accruing when the breach occurs.  Tex. Civ. Prac. & Rem.
Code § 16.0051; Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002).

Contracts for title insurance are indemnity contracts.
Chicago Title Ins. Co. v. McDaniel, 875 S.W.2d 310, 311 (Tex.
1994).  This means that "the only duty imposed by a title insurance
policy is the duty to indemnify the insured against losses caused
by defects in title."   Id.; Tex. Ins. Code § 2701.001 ("A title
insurance policy or other title insurance form constitutes a
statement of the terms and conditions of the indemnity under the
policy or form.").   "A title insurance company is not a title

---

[38]   Additionally, these claims would be barred under the two-year statute
of limitations, as there are no allegations that First American took any action
related to Plaintiff's property after 2007.

abstractor and owes no duty to examine title . . . the only duty a title insurance company has to its insured is to indemnify him against loss suffered by defects in title; the title insurance company owes no duty to point out any outstanding encumbrances." Martinka v. Commonwealth Land Title Ins. Co., 836 S.W.2d 773, 777 (Tex. App.-Houston [1st Dist.], writ denied).

Plaintiff alleges that she received title insurance from First American, and that First American committed a breach of contract by not properly checking the title to Plaintiff's property. However, the law is clear that title insurance companies owe no duty to examine title and that their only role as an underwriter to a policy is to indemnify. Accordingly, in the absence of an allegation that there was a failure to indemnify, Plaintiff's claim for breach of contract against First American should be dismissed.

### 6. Aiding and Abetting

Texas law recognizes a cause of action for aiding and abetting the breach of a fiduciary duty. Floyd v. Hefner, 556 F. Supp.2d 617, 654-55 (S.D. Tex. 2008). In In re Houston Reg'l Sports Network, L.P., 547 B.R. 717, 758-59 (Bankr. S.D. Tex. 2016), the court found "that Texas would recognize the tort of aiding and abetting fraud."

In Juhl, the Texas Supreme Court discussed "concert of action" liability under Restatement (Second) of Torts § 876, but declined to apply that theory of liability. 936 S.W.2d at 643-45. The

court cautioned that "[t]he purpose of the concert of action theory is to deter antisocial or dangerous behavior," cited cases where courts in other states applied aiding and abetting liability, and stated that the imposition of liability occurred in cases that "almost always involved conduct posing a high degree of risk to others," such as drag racing on public roads.  Id. at 644-45.

Syal, discussed Juhl and held that "[e]ven if Texas courts are open to recognizing aiding and abetting liability, it is thus unlikely that they will extend it to claims for aiding and abetting the competition-related torts at issue here."  56 F. Supp.3d at 883-84 (citing W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC, 437 S.W.3d 917, 922 (Tex. App.–Dallas 2014, pet. filed)).  The court quoted Hinojosa v. City of Terrel, Tex., 834 F.2d 1223, 1231 n. 12 (5ᵗʰ Cir. 1988), which stated that "[a] party who wants a court to adopt an innovative rule of state law should litigate in state rather than federal court . . . Federal judges are disinclined to make departures in areas of law that we have no responsibility for developing."  (alterations in original)(citations omitted).

Regardless of whether Texas law would recognize a claim for aiding and abetting, Plaintiff's claim for aiding and abetting liability against First American fails because all the underlying tort claims against First American should be dismissed.  W. Fork Advisors, 437 S.W.3d at 921 ("the [Texas] supreme court has

26

specifically dealt with aiding and abetting-as it has dealt with conspiracy-as a "dependent" claim, which is "premised on" an underlying tort.")(citing Ernst & Young, 51 S.W.3d at 583). Therefore, Plaintiff's claim for aiding and abetting against First American should be dismissed.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion to remand be **DENIED,** the motions to strike be **GRANTED,** and that First American's motion to dismiss be **GRANTED.** Joinder of Vasek is stricken from Plaintiff's first amended complaint, and Vasek and First American should be **DISMISSED** from this action.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this **19**th day of October, 2017.

U.S. MAGISTRATE JUDGE