United States District Court
Southern District of Texas

**ENTERED**

May 06, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA CAO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-0321 |
| | § | |
| BSI FINANCIAL SERVICES, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendants BSI Financial Services, Inc. ("BSI"), Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust Series 2012-10 ("Christiana Trust"), and Carrington Mortgage Services, LLC's ("Carrington")(collectively the "Movants") Motion for Summary Judgment (Doc. 52) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 58). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that both motions be **DENIED**.

## I.  Case Background

Plaintiff filed this lawsuit to prevent the foreclosure of her property located at 4003 Feagan Street, Unit One, Houston, Texas (the "Property").

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 6, Ord. Dated Feb. 16, 2017.

## A.  __Factual Background__

On January 1, 2007, Plaintiff purchased the Property from Countrywide Home Loans Inc.[2]  Plaintiff paid a $60,000 down payment and entered into a $240,000 mortgage loan ("the Loan") with New Century Mortgage Corporation ("NCMC").[3]  A deed of trust ("the Deed of Trust") naming Eldon L. Youngblood ("Youngblood") as trustee and in favor of NCMC secured the Loan.[4]  On February 8, 2007, the property was conveyed through a special warranty deed from the "Bank of New York as Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2006-4", to Plaintiff.[5]

On March 28, 2007, Plaintiff received notice that NCMC had transferred the servicing of her account to HomeEq Sevicing ("HomeEq").[6]  In May 2009, Plaintiff and HomeEq entered a modification agreement (the "Modification Agreement") whereby: (1) the Loan's outstanding balance was adjusted to $261,182.32 to reflect the capitalization of past due amounts; (2) Plaintiff's

---

[2]   See Doc. 52-1, Ex. C to Movants' Mot. for Summ. J. The Property Sale Contract.

[3]   See id. p. 1; Doc. 58-1, Ex. A to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 2 of 42 (Mortgage Loan).  Due to the style of Plaintiff's exhibits, when citing to Plaintiff's documents, the court will pincite to the pagination as it appears in the top right corner of each ECF document, not the page number within each exhibit.

[4]   See Doc. 58-1, Ex. B to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 6-22 of 42 (Deed of Trust).

[5]   See Doc. 52-1, Ex. D to Movants' Mot. for Summ. J., Special Warranty Deed.

[6]   See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 24-25 of 42 (Notice of Transfer of Servicing).

total monthly payment was adjusted to $2,387.29;[7] and (3) the Loan's interest rate was adjusted to 5.750% and subject to change during the modification term "as long as the change result[ed] in an interest rate that is lesser or equal to [5.750%.]"[8] The interest rate was capped at 5.750% until April 1, 2014.[9]

On April 29, 2010, HomeEq notified Plaintiff that servicing of her loan was being transferred to BSI Financial Services, Inc. ("BSI").[10] On September 23, 2010, BSI returned a check to Plaintiff stating that her account was in foreclosure and her check was not enough to reinstate the account.[11] On September 27, 2010, BSI sent Plaintiff a letter stating that it would accelerate the balance of the Loan if she did not pay $8,930.30 by November 1, 2010.[12] Plaintiff protested the alleged amount owed and requested that BSI explain the amount demanded.[13] Plaintiff was told to apply for a loan modification.[14] Plaintiff alleges that during the loan

---

[7]    The new payment reflected a principal and interest payment of $1567.55 and an escrow payment of $819.74.

[8]    See Doc. 58-1, Ex. D to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 39-42 of 42 (Modification Agreement).

[9]    See id.

[10]    See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 26-29 of 42 (April 29, 2010 Letter).

[11]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 2 of 73 (Sept. 23, 2010 Letter).

[12]    See id. p. 3 of 73 (Sept. 27, 2010 Letter).

[13]    See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 18-20 of 29 (Emails Between Pl. and BSI).

[14]    See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 5.

modification review her payments were rejected.[15]  On November 23, 2010, Plaintiff's loan modification application was denied.[16]  On November 30, 2010, BSI informed Plaintiff that she would have to pay $13,777.72 plus attorney's fees and costs in order to bring her account out of foreclosure.[17]  Plaintiff consistently took issue with the amount that BSI demanded.[18]  Plaintiff alleges that on December 20, 2010, BSI demanded a payment of $17,479.19 or her home would be foreclosed.[19]

On December 20, 2010, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for NCMC, removed Youngblood as trustee and appointed "Jeff Leva, Audrey Lewis, Theresa Perales or Sandy Dasigenis, Deborah Schwartz, Naomi Feistel or either one of them" as substitute trustees.[20]  On December 28, 2010, a document was executed that purportedly assigned the Deed of Trust from NCMC to MERS, acting as nominee for NCMC, to be

---

[15]    See id. p. 6.

[16]    See Doc. 59-2, Ex. H. to Pl.'s Resp. to Movants' Mot. for Sum. J. p. 17 of 29 (Modification Denial).

[17]    See id. p. 18 of 29 (Nov. 30, 2010 Emails).

[18]    See id. pp. 18-20 of 29 (Emails Between Pl. and BSI).

[19]    See id.; Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 7. Plaintiff's supporting evidence appears to cut off before showing the total BSI demanded.

[20]    See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 60 of 73 (Appointment of Substitute Trustee).

effective as of November 4, 2010.[21]   On December 29, 2010, MERS, acting as nominee for NCMC, assigned the Deed of Trust to "The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust," to be effective as of December 3, 2010.[22]

Plaintiff claims that she consistently protested the $17,479.19 amount that BSI demanded.[23]   On December 29, 2010, Plaintiff paid BSI $17,479.19, but claims that the payment was made under duress.[24]   On January 7, 2011, BSI executed a notice of rescission of the acceleration of the Loan.[25]

On January 17, 2011, BSI demanded that Plaintiff pay $2,672.49, which included a late fee of $366.35.[26]   Pursuant to the terms of the Loan, the Movants were only authorized to charge Plaintiff a late fee equal to five percent of the overdue payment of principal and interest, and the late fee may only be charged

---

[21]   See id. pp. 63-64 of 73 (Dec. 28, 2010 Assignment of the Deed of Trust).

[22]   See id. pp. 61-62 of 73 (Dec. 29, 2010 Assignment of the Deed of Trust).

[23]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 7.

[24]   See id.; Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 13-14 of 47 (Dec. 29, 2010 Payment).

[25]   See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 4-7 of 73 (Jan. 7, 2011 Notice of Rescission).

[26]   See id. p. 8 of 73 (Jan. 17, 2011 Payment Reminder).

once per late payment.[27]  On January 19, 2011, Plaintiff received a statement from BSI that indicated she owed $4,690.66, which included late charges of $78.38.[28]  The statement also indicated that Plaintiff had only paid $17,179.85 since December 19, 2010, despite her December 29 payment of $17,479.19, and that BSI had received a partial payment of $1,604.92.[29]

On another January 19, 2011 statement, BSI demanded that Plaintiff pay $3,085.74 by February 16, 2011.[30]  Plaintiff claims that on January 26, 2011, due to the multiple inconsistent statements of BSI, she made a normal payment of $2,306.84.[31]

On February 6, 2011, Plaintiff made a payment of $778.90, believing that amount to make her current through February 2011.[32] On February 16, 2011, BSI demanded that Plaintiff pay $3,676.94,

---

[27]    See Doc. 58-1, Ex. A to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 4 of 42 (The Loan).

[28]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 9 of 73 (Jan. 19, 2011 Statement).

[29]    See id.

[30]    See id. p. 10 of 73 (2nd Jan. 19, 2011 Statement).  This statement appears to reflect Plaintiff's partial payment ($4,690.66 - $1,604.92 = $3,085.74).

[31]    See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 8.  As support, Plaintiff cites to a payment history table.  As the source of the table is unclear, the court cannot definitively say that this payment was made.

[32]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 17 of 47 (Feb. 6, 2011 Payment).  Plaintiff calculated her payment as follows: ($2,306.14 (Monthly Payment) + $78.38 (Jan. Late Fee)) - ($1,604.92 (Surplus from Partial Payment) + $0.70 (Overpayment on Jan. Payment)) = $778.90.

which included unpaid late fees of $1,370.80.[33]  On March 9, 2011, Plaintiff's escrow account was terminated and she was issued a balance refund check of $191.14.[34]  On March 13, 2011, Plaintiff made a payment of $1,550 "[d]ue to inconsistent Loan Billing Statements, Payment Reminders and abrupt and lack of any kind of notification of escrow cancelation."[35]  On March 16, 2011, BSI demanded a payment of $3,016.73, including $1,449.18 in late fees.[36]

On May 12, 2011, Plaintiff made a payment of $1,560, and, on June 17, 2011, Plaintiff made a payment of $1,567.55.[37]  On July 8, 2011, and August 8, 2011, Plaintiff made payments of $1,570.[38]  On August 8, 2011, BSI demanded a payment of $3,330.25, which included $1,762.70 for unpaid late fees.[39]  On the following dates Plaintiff made payments of $1,570: (1) September 8, 2011; (2) October 7, 2011; (3) November 8, 2011; and (4) December 8, 2011.[40]  Throughout

---

[33]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 11 of 73 (Feb. 16, 2011 Payment Reminder).

[34]    See Doc. 58-4, Ex. M to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 16-17 of 51 (Escrow Termination).

[35]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 16-17 of 47 (March 13, 2011 Payment & Letter).

[36]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12 of 73 (March 16, 2011 Payment Reminder).

[37]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 18-19 of 47 (2011 Payments).

[38]    See id.

[39]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 13 of 73 (Aug. 29, 2011 Past Due Notice).

[40]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 21-22 of 47.

this time period, BSI continued to make payment demands ranging from $3,527.01 to $3,618.24 that included unpaid late fees ranging from $1,959.46 to $2,050.69.[41]

On January 18, 2012, BSI sent Plaintiff a letter indicating that she needed to pay $5,264.17 within fifteen days or it would commence the foreclosure process.[42]  On February 2, 2012, Plaintiff made a payment of $1,570, which was returned the same day because her account was in foreclosure and the amount was not enough to reinstate the account.[43]  On February 14, 2012, BSI sent Plaintiff a demand for payment and notice of its intent to accelerate.[44]  The notice demanded that Plaintiff pay $7,467.02 by March 15, 2012, or the Loan would be accelerated and the Property would be posted for a foreclosure sale.[45]

On March 16, 2012, Plaintiff filed a lawsuit against Protium Master Grantor Trust, Prommis Solutions, and BSI, in state court to prevent the foreclosure of the Property.  See Cao v. Protium Master Grantor Trust, et al., Civ. Act. No. 2012-16143 (165th Dist. Ct., Harris County, Tex. Mar. 16, 2012).  On the same day, the state

---

[41]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 11-16 of 73 (2011 Past Due Notices and Payment Reminders).

[42]    See id. p. 17 of 73 (Jan. 18, 2012 Letter).

[43]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 23 of 47.

[44]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 19-21 of 73.

[45]    See id. p. 20 of 73.

court granted Plaintiff a temporary restraining order that restrained the state court defendants from: (1) accelerating or threatening to accelerate the balance of the Loan and refusing to accept payments; (2) posting the Loan for foreclosure or foreclosing on the Property under any provision of the Deed of Trust; and (3) demanding any sum of money over the principal and interest and late fee set out in the Loan if payment was not made within fifteen days of the due date.[46]  On March 29, 2012, the parties to the state court lawsuit entered into a Mediated Rule 11 Agreement requiring that: (1) Plaintiff pay $6,270.20 for four payments of principal and interest; (2) Plaintiff make principal and interest and late fee payments under the terms of the Loan beginning May 1, 2012; (3) Defendant not accelerate the Loan or post the Property for foreclosure for the pendency of the lawsuit as long as Plaintiff made her payments; (4) the parties not take any action in the case for 90 days while they attempt to resolve the dispute.[47]  Plaintiff made a payment of $6,270.20 on March 31, 2012.[48]  Plaintiff made a payment of $1,570 on April 6, 2012.[49]

On May 16, 2012, apparently in direct violation of the Rule 11

---

[46]    See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 36-37 of 47.

[47]    See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 38-39 of 47 (Mediated Rule 11 Agreement).

[48]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 26 of 47 (March 31, 2012 Payment).

[49]    See id. p. 27 of 47 (April 6, 2012 Payment).

9

Agreement, BSI sent Plaintiff a payment reminder stating that she owed $7,471.44, which included $4,892.91 in late fees.[50]  On the 6th of June, July, and August of 2012, Plaintiff made a payment of $1,570.[51]  On August 9, 2012, BSI sent Plaintiff a notice of default and intent to accelerate.[52]  The letter stated that Plaintiff owed $13,532.74, which included $1,266.91 in late fees and $4,530.24 in "Other Fees."[53]  The letter also demanded that Plaintiff pay $13,532.74 within thirty days or the Loan would be accelerated and foreclosure proceedings would begin.[54]  On September 6, 2012, Plaintiff made a payment of $1,570.[55]

On September 14, 2012, the Loan was sold to Christiana Trust.[56]  On September 20, 2012, Plaintiff was sent a Fair Debt Collection Practices Act Notice from The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium

---

[50]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 22 of 73 (May 16, 2012 Payment Reminder).

[51]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 29-31 of 47 (June, July, & August 2012 Payments).

[52]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 23-25 of 73 (May 16, 2012 Payment Reminder).

[53]    See id. pp. 23-25 of 73 (August 9, 2012 Notice of Default).

[54]    See id.

[55]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 32 of 47 (September 6, 2012 Payment).

[56]    See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot for Summ. J. P. 29-31 of 42 (Notice of Sale).

Master Grantor Trust, and BSI.[57]  The notice stated that Plaintiff
owed $257,630.28 and that the Property would be foreclosed on soon
if Plaintiff did not rectify the default.[58]  Plaintiff claims that
she responded by sending proof of her timely payments and a copy of
the temporary restraining order.[59]

On November 2, 2012, a letter was sent to Plaintiff notifying
her that servicing of the Loan was transferred from BSI to
Carrington, effective on October 21, 2012.[60]  Plaintiff claims that
on November 6, 2012, BSI refused Plaintiff's timely November
payment, and that on December 11, 2012, she notified Carrington of
the "incorrect charges, misapplication of payments, the pending
lawsuit and provided proof of such payments and the Rule 11
Agreement."[61]

On February 11, 2013, Plaintiff sent a cashier's check for
$7,837.75 to Carrington in an attempt to make payments for November
2012 through March 2013.[62]  On February 13, 2013, Plaintiff was
notified that her payment was being rejected because it did not

---

[57]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
26-28 of 73 ("FDCPA Notice Letter").

[58]     See id.

[59]     See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12.

[60]     See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
32-34 of 42 (Notice of Servicing Transfer).

[61]     See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12.

[62]     See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p.
24 of 29 (February, 26, 2013 Letter).

represent the total amount owed to cure her default.[63]  On February 15, 2013, Carrington notified Plaintiff that she owed $27,223.69 for overdue payments dating back to June 2012 as well as outstanding late fees and other charges.[64]  In a statement dated February 18, 2013, Carrington demanded that Plaintiff pay $28,900.44, which included $1,815.50 in late fees and $5,220.24 in "Default Cost(s)."[65]  On February 26, 2013, Plaintiff notified Carrington of the disputed amounts, the Rule 11 Agreement, and payments that had been made but not accounted for.[66]

On April 3, 2013, Carrington notified Plaintiff that it was unable to research or validate the alleged issues associated with BSI's servicing of the Loan and that servicing of the Loan had been transferred to Carrington with the June 2012 payment due.[67] Carrington also stated that it would not adhere to the terms of the Rule 11 Agreement because it was no longer valid.[68]  On April 18, 2013, Carrington sent a statement to Plaintiff that stated she owed $32,921.44, which included $1,972.24 in late fees and $5,887.74 in

---

[63]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 29 of 73.

[64]     See id. pp. 30-32 of 73 (February 15, 2013 Letter).

[65]     See id. p. 33 of 73 (February 18, 2013 Statement).

[66]     See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 24 of 29 (February, 26, 2013 Letter).

[67]     See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 25 of 29 (April 3, 2013 Letter).

[68]     See id.

"Default Cost(s)."[69]   On February 18, 2014, Carrington sent Plaintiff a statement that showed she owed $53,871.23, which included $2,755.94 in late fees and $8,930.64 in "Default Costs."[70]

On July 24, 2014, Plaintiff was notified that servicing of the Loan had been transferred from Carrington back to BSI and that the creditor on the loan was "OakTree."[71]   On September 18, 2014, BSI sent Plaintiff a statement that she pay $87,871.50, which included $12,763.47 in fees and charges.[72]   On November 10, 2014, Plaintiff was notified that the July 24, 2014, letter had incorrectly identified OakTree as the creditor where the creditor was still Christiana Trust.[73]   On October 19, 2015, BSI sent Plaintiff a demand for $129,530.10, which included $20,184.88 in fees and charges.[74]

On or about October 26, 2015, the parties to the state court lawsuit attended mediation.[75]   At mediation, the parties signed an agreement (the "Settlement Agreement") that: (1) Plaintiff would

---

[69]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 34 of 73 (April 18, 2013 Statement).

[70]     See id. p. 35 of 73 (February 18, 2014 Statement).

[71]     See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 35 of 42 (July 24, 2014 Notice).

[72]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 39 of 73 (Sept. 18, 2014 Statement).

[73]     See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 36 of 42 (Nov. 10, 2014 Notice).

[74]     See id. p. 43 of 73 (Oct. 19, 2015 Statement).

[75]     See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 15.

apply for a HAMP loan and dismiss her lawsuit without prejudice by November 6, 2015; (2) BSI and Oak Tree[76] would agree to not foreclose on the Property while the HAMP loan was being processed or during the HAMP loan's trial period if it was approved; (3) if the HAMP loan was not approved, BSI would notify Plaintiff and Oak Tree would not foreclose on the Property until February 2, 2016; and (4) Plaintiff and BSI would file a motion for nonsuit without prejudice by November 6, 2015, and the motion would be prepared by BSI's counsel.[77]   Plaintiff claims that the mediator assured her that an impasse would be documented and that the Settlement Agreement was an offer, not a settlement.[78]

On November 4, 2015, after Plaintiff refused to sign her copy of the motion to dismiss prepared by BSI's counsel, the state court defendants filed a motion to dismiss.[79]  On November 13, 2015, the state court enforced the settlement agreement and dismissed the case without prejudice.[80]   On December 21, 2015, the Dispute Resolution Center, filed an amended document noting that the case had previously been reported as "impasse," but settled after

---

[76]   It is not clear how Oak Tree had standing to foreclose on the Property given the November 10, 2014 notification.

[77]   See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 40-41 of 47 (the Settlement Agreement).

[78]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 15.

[79]   See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 42-43 of 47 (Motion to Dismiss).

[80]   See id. p. 44 of 47 (Order of Dismissal).

mediation.[81]   It is unclear to the court whether the parties actually settled at mediation or why Plaintiff signed an agreement that was, as she alleges, merely an offer.

On July 29, 2016, the Deed of Trust was assigned from The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust to Christiana Trust.[82] On October 6, 2016, Christiana Trust removed all trustees on the Deed of Trust and named "Jeff Leva or Lillian Poelker or Sandy Dasigenis or Patricia Poston or David Poston or Megan Randle-Bender or Rebecca Bolton or Paul A. Hoefker or Robert L. Negrin" as substitute trustees.[83]

On November 29, 2016, Plaintiff was notified that pursuant to the February 14, 2012 Notice, the maturity date of the Loan was accelerated and the total amount due was $397,615.43.[84] On December 19, 2016, BSI sent Plaintiff a statement demanding $187,566.28, which included $26,558.33 in fees and other charges.[85] On December 28, 2016, Plaintiff filed the present suit in state court, and on December 29, 2016, Plaintiff's application for a temporary

---

[81]     See id. p. 45 of 47 (Amended ADR Doc.).

[82]     See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 65 of 73.

[83]     See id. p. 67 of 73 (Appointment of Substitute Trustee).

[84]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 45-46 of 73.

[85]     See id. p. 55 of 73 (Dec. 19, 2016 Statement).

15

restraining order was granted.[86]

On September 8, 2017, Christiana Trust assigned the Deed of Trust to Series 1 of Normandy Mortgage Depositor Company, LLC ("Normandy Mortgage").[87]  On September 13, 2017, the Deed of Trust was assigned from Normandy Mortgage to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust as Trustee for Normandy Mortgage Loan Trust, Series 2017-1.[88]  On March 10, 2018, Plaintiff received a notice of changes to her mortgage interest rate and payments that stated her new payment would be $2,921.88 and her loan balance was $211,252.68 with a remaining loan term of 227 months.[89]

On July 26, 2018, Plaintiff received notice that the Loan had been sold to MTGLQ Investors, L.P. ("MTGLQ") on June 29, 2018.[90] On August 2, 2018, servicing of the Loan was transferred to Selen Financing LP ("Selene").[91]  On September 6, 2018, Christiana Trust

---

[86]     See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 46-47 of 73 (2016 Temporary Restraining Order).

[87]     See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 70 of 73 (Sept. 8, 2017 Assignment of the Deed of Trust).

[88]     See Doc. 52-1, Ex. I to Movants' Mot. for Summ. J. p. 82 of 113 (Assignment of Deed of Trust).

[89]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 52-54 of 73.

[90]     See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 38 of 42.

[91]     See Doc. 52-1, Ex. J to Movants' Mot. for Summ. J. p. 99 of 113 (Notice of Servicing Transfer).

16

filed a notice of rescission of acceleration.[92]   Plaintiff incorrectly argues that this notice shows that she cured all prior alleged defaults.  Rather, the notice rescinded Christiana Trust's prior acceleration of the balance of the Loan.

On September 27, 2018, Selene Finance sent Plaintiff a notice of default and intent to accelerate stating that she must pay $253,127.92 to cure her default, which included $1,110.17 in late charges and $21,184.17 in "Corporate Advance Balance."[93]

On February 27, 2019, Plaintiff filed another lawsuit in state court against Selene and MTGLQ and a temporary restraining order was granted the same day.[94]  Plaintiff has repeatedly disputed the amount she allegedly owes and attempted to resolve her issues with Selene Financing directly.[95]  Selene Financing has continued with the foreclosure process.

## B.   **Procedural Background**

Plaintiff filed this lawsuit in state court on December 28, 2016, against BSI and Christiana Trust.[96]  On February 1, 2017, the

---

[92]   See Doc. 1-4, Ex. 5 to Pl.'s Orig. Compl. p. 38 of 53 (Notice of Rescission of Acceleration).

[93]   See Doc. 1-4, Ex. 6 to Pl.'s Orig. Compl. p. 40 of 53.

[94]   See id.; Doc. 1-5, Temp. Restraining Ord.

[95]   See Doc. 1-4, Exs. 7 & 8 to Pl.'s Orig. Compl. pp. 43-47 of 53.

[96]   See Doc. 1-1, Ex. A to Not. of Removal p. 2 of 110 (Pl.'s Orig. Pet.).  It appears that Plaintiff incorrectly named the parties, but intended that the lawsuit be against BSI and Christiana Trust.  The court is proceeding on the understanding that BSI and Christiana Trust are the correct parties.

lawsuit was removed to this court.[97]   On May 12, 2017, Plaintiff filed an amended complaint, without leave of the court, adding First American Title Insurance Company ("First American"), Carrington, and Jason Vasek.[98]  On November 6, 2017, First American and Vasek were dismissed from the lawsuit.[99]

On September 17, 2018, the Movants filed their pending motion for summary judgment.[100]   Plaintiff filed her pending motion for summary judgment and a response to the Movants' motion on October 17, 2018.[101]

On February 27, 2019, Plaintiff filed another lawsuit in state court against Selene and MTGLQ.[102]   On March 4, 2019, Plaintiff's second lawsuit was removed to this court.[103]   On March 25, 2019, Plaintiff's second lawsuit was consolidated into her first lawsuit forming the present lawsuit.[104]

On April 30, 2019, with the court's leave, Plaintiff filed her

---

[97]   See Doc. 1, Not. of Removal.

[98]   See Doc. 15, Pl.'s 1st Am. Compl.

[99]   See Doc. 38, Ord. Dated Nov. 6, 2017.

[100]   See Doc. 52, Movants' Mot. for Summ. J.

[101]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J.

[102]   See Doc. 1-4 in 4:19-cv-00769, Ex. C-1 to Not. of Removal, Pl.'s Orig. Pet.

[103]   See Doc. 1 in 4:19-cv-00769, Not. of Removal.

[104]   See Doc. 68, Ord. Dated Mar 25, 2019.

18

second amended complaint against all Defendants.[105]   The second
amended complaint affects the pending motions as discussed below.

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists on any material fact and the moving party
is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a);
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v.
Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).   A material fact is a
fact that is identified by applicable substantive law as critical
to the outcome of the suit.   Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal
Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).   To be genuine,
the dispute regarding a material fact must be supported by evidence
such that a reasonable jury could resolve the issue in favor of
either party.   See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d
396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.   Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).   The movant may meet this burden by demonstrating an
absence of evidence in support of one or more elements of the case

---

[105]   See Doc. 87, Pl.'s 2nd Am. Compl.

19

for which the nonmovant bears the burden of proof. <u>See</u> <u>Celotex</u>
<u>Corp.</u>, 477 U.S. at 322; <u>Exxon Corp. v. Oxxford Clothes, Inc.</u>, 109
F.3d 1070, 1074 (5th Cir. 1997).  If the moving party carries its
burden, the nonmovant may not rest on the allegations or denials in
his pleading but must respond with evidence showing a genuine
factual dispute.  <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v.</u>
<u>Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

Due to Plaintiff's recent amendment of her complaint, the
court will first address which portions of the pending motions are
rendered moot by the amendment before ruling on the portions that
are not moot.

### A.   **Effect of Plaintiff's Amendment**

In Plaintiff's first amended complaint she pled the following
causes of actions against the Movants: (1) fraud and
misrepresentation; (2) statutory fraud; (3) slander of title and
cloud on title to real estate; (4) violation of Texas Civil
Practices and Remedies Code Section 12.002 ("Section 12.002"); (5)
negligence per se; (6) gross negligence per se; and (7) aiding and
abetting.[106]  Against Defendants BSI and Carrington, Plaintiff also
pled causes of action for breach of contract and unfair debt
collection practices.[107]  The Movants' summary judgment motion

---

[106]   <u>See</u> Doc. 15, Pl.'s 1st Am. Orig. Pet. pp. 6-10.

[107]   <u>See</u> <u>id.</u> pp. 10-11.

addresses all of the claims pled in Plaintiff's first amended complaint.

On April 30, 2019, Plaintiff filed her second amended complaint pleading the following causes of action against all Defendants: (1) fraudulent transfers under the United States Code and/or Texas Business and Commerce Code; (2) usury; (3) fraud and misrepresentations; (4) cloud on title; (5) violation of Section 12.002; (6) breach of contract; (7) conspiracy; (8) unfair debt collections practices under the Fair Debt Collection Practices Act ("FDCPA"), Texas Debt Collection Practices Act ("TDCPA"), and Deceptive Trade Practices Act ("DTPA"); (9) civil theft/conversion; (10) duress; and (11) negligence per se and gross negligence per se.[108]

### 1.   New Claims and Abandoned Claims

Plaintiff's claims for fraudulent transfers, usury, conspiracy, duress, and civil theft/conversion were not addressed by the Movants' motion for summary judgment because they were added in Plaintiff's second amended complaint.[109]   In her second amended complaint, Plaintiff has abandoned her causes of action for statutory fraud, slander of title, and aiding and abetting. Accordingly, the portions of the Movants' summary judgment motion addressing these claims are now moot.

---

[108]   See Doc. 87, Pl.'s 2nd Am. Compl. pp. 14-26.

[109]   See id.; Doc. 15, Pl.'s 1st Am. Orig. Pet. pp. 6-10.

## 2.   Cloud on Title, Violation of Section 12.002, Negligence per se, and Gross Negligence per se

In Plaintiff's first amended complaint, her claims for cloud on title, violation of Section 12.002, negligence per se, and gross negligence per se were based upon an allegedly illegal and defective Notice of Substitute Trustee Sale.[110]   In Plaintiff's second amended complaint, she based these claims on allegedly defective and fraudulent assignments of the Deed of Trust and alleged violations of the Deceptive Trade Practices Act.[111]   The Movants' motion for summary judgment on these issues concerns the factual allegations and legal theory asserted in Plaintiff's first amended complaint.   Accordingly, as the nature of these claims has substantially changed, those portions of the Movants' motion for summary judgment addressing these issues should be denied as moot.

## 3.   Unfair Debt Collection

In Plaintiff's first amended complaint she pleads her cause of action for unfair debt collection under the Texas Debt Collection Act.   In Plaintiff's second amended complaint she also pleads this cause of action under the Fair Debt Collection Practices Act and the Texas Deceptive Trade Practices Act.[112]  Additionally, Plaintiff modified her factual allegations concerning this cause of action. For example, in her second amended complaint, Plaintiff makes a

---

[110]   See Doc. 15, Pl.'s 1st Am. Orig. Pet. pp. 7-8.

[111]   See Doc. 87, Pl.'s 2nd Am. Compl. pp. 20, 26.

[112]   See id. pp. 22-23.

claim not contained in her first amended complaint that "Defendants
. . . harassed Plaintiff's family when in fact Plaintiff's family
does not have any rights or interest in Plaintiff's property or
mortgage[.]"[113]   Accordingly, as the nature of this claim has
substantially changed the Movants' motion for summary judgment on
Plaintiff's unfair debt collection cause of action should be denied
as moot.

###    4.    Fraud and Misrepresentation

Regarding Plaintiff's cause of action for fraud and
misrepresentation, in her first amended complaint she alleges that
the Movants: (1) made false representations during the sale of her
property; and (2) falsely represented that she was late on payments
and in default on the Loan.[114]   In her second amended complaint,
Plaintiff makes additional factual allegations including that
Defendants falsely represented the amount of interest being charged
and that they had standing to foreclose on the Property.[115]   Thus,
as the nature of this claim has substantially changed the
corresponding portion of the Movants' motion should be denied as
moot.

###    5.    Breach of Contract

In Plaintiff's first amended complaint, she alleges that BSI

---

[113]    See id. p. 23.

[114]    See Doc. 15, Pl.'s 1st Am. Orig. Pet. p. 6.

[115]    See Doc. 87, Pl.'s 2nd Am. Compl. pp. 19-20.

and Carrington, as BSI's successor, breached the Modification Agreement "by knowingly charging Plaintiff for interest and other charges that were not provided for in the agreement."[116]   In Plaintiff's second amended complaint, she alleges that Defendants, as successors in the Modification Agreement, "breached the agreement by knowingly charging Plaintiff for interest, late fees and other charges that were not provided for in the agreement."[117] Plaintiff has subtly changed her breach of contract claim in two ways: (1) the claim now includes all Defendants instead of just BSI and Carrington; and (2) the claim now alleges that late fees were imposed that were not contractually agreed in the Modification Agreement.   However, the first amended complaint alleged that "other charges" were charged that were not provided for in the Modification Agreement and, in their motion for summary judgment, the Movants addressed the breach of contract claim as though it applied to each of them.[118]  These "other charges" would presumably encompass late fees, and the Movants have argued as though the breach of contract claim applied to all of them.  Accordingly, the court finds that it may address the breach of contract claim at this time.

### 6.  Plaintiff's Cross-Motion for Summary Judgment

---

[116]  <u>See</u> Doc. 15, Pl.'s 1st Am. Orig. Pet. p. 10.

[117]  <u>See</u> Doc. 87, Pl.'s 2nd Am. Compl. pp. 20-21.

[118]  <u>See</u> Doc. 52, the Movants' Mot. for Summ. J. pp. 21-24.

With the exception of Plaintiff's breach of contract claim discussed below, Plaintiff has substantially altered, removed, or recently added all of her causes of action that were addressed in her cross-motion for summary judgment. Accordingly, Plaintiff's cross-motion for summary judgment is moot except for the portion addressing her breach of contract claim.

## B. __Breach of Contract__

The Movants argue that Plaintiff's breach of contract claim should be dismissed because she cannot show that: (1) she performed her contractual obligations; (2) the Movants breached any contractual obligations; and (3) she was charged any unauthorized interest or improper fees.[119] The Movants also argue that because Plaintiff is in default, she cannot maintain a suit for breach of contract.[120] Plaintiff argues that summary judgment should be granted in favor of her on her breach of contract claim.

The summary judgment evidence shows that Plaintiff paid $17,479.19 on December 29, 2010. Although Plaintiff claims that this payment was made under duress, the payment still indisputably made Plaintiff current on her payments. Over the next few months, the summary judgment evidence supports the following: (1) Plaintiff may have missed her January 2011 payment deadline; (2) BSI sent

---

[119]    See id. pp. 21-24.

[120]    See id. p. 22.

25

Plaintiff multiple demands for payment that included late fees that were excessively larger than those allowed in the agreements between the parties; (3) Plaintiff made payments that arguably cured her late January 2011 payment and made her current on her payments through February 2011; (4) Plaintiff's escrow account was cancelled in March 2011; and (5) Plaintiff made a March payment that did not include an escrow payment.  There is also evidence that Plaintiff may have been being charged interest in excess of that allowed by the Modification Agreement.[121]

The situation between the parties quickly snowballed out of control resulting in: (1) a flood of litigation; (2) the rejection of Plaintiff's payments; (3) increasing fees and overdue balances; and (4) a complete deterioration of the contractual relationship between the parties.  Contrary to the Movants' suggestion, the summary judgment evidence does not conclusively establish that: (1) Plaintiff failed to perform her contractual obligations; (2) the Movants did not breach any contractual obligations; and (3) Plaintiff was not charged any unauthorized interest or improper fees.  Rather, all of these issues are in dispute and will need to be resolved by a jury at trial.

Regarding the Movants' argument that Plaintiff's alleged default prevents her from maintaining a suit for breach of

---

[121]    See Doc. 58-4, Ex. K to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 2-4 of 51 (Loan Table).

contract, the Movants cite to case law holding that "when one party to a contract commits a material breach of [a] contract, the other party is discharged or excused from any obligation to perform." See RE/MAX of Texas, Inc. v. Katar Corp., 989 S.W.2d 363, 364–65 (Tex. 1999). Thus, an important caveat to the Movants' argument is that it only applies if Plaintiff breached first and did not cure her breach. See id. at 365 n.4. The summary judgment evidence does not establish which party, if any, breached the agreements first or whether such a breach was cured. Accordingly, the Movants are not entitled to summary judgment on this basis.

For these reasons, the Movants' motion should be **DENIED** as to Plaintiff's breach of contract claim.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that the Movants' motion be **DENIED** on Plaintiff's breach of contract claim and **DENIED** as moot in all other regards. The court further **RECOMMENDS** that Plaintiff's motion be **DENIED** on her breach of contract claim and **DENIED** as moot in all other regards.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>6th</u> day of May, 2019.

U.S. MAGISTRATE JUDGE