United States District Court
Southern District of Texas

**ENTERED**

June 30, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA CAO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-0321 |
| | § | |
| BSI FINANCIAL SERVICES, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Defendants BSI Financial Services, Inc. ("BSI"), Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust Series 2012-10 ("Christiana Trust"), and Carrington Mortgage Services, LLC's ("Carrington"), Amended Motion for Judgment on the Pleadings (Doc. 133), Motion for Summary Judgment (Doc. 136), Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 147), and Motion to Strike Plaintiff's Declaration (Doc. 156). Also pending before the court are Defendants MTGLQ Investors, L.P. ("MTGLQ"), and Selene Financing LP's ("Selene") Motion for Summary Judgment and Judgment on the Pleadings (Doc. 135), Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 146), Objections to and Motion to Strike Plaintiff's Declaration (Doc. 155). Also pending before the court

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 6, Ord. Dated Feb. 16, 2017.

are Plaintiff's Motion for Summary Judgment and Application for Temporary Injunction (Doc. 139) and Motion for Preliminary Injunction (Doc. 158). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motions be **DENIED** and that Defendants' motions for summary judgment and judgment on the pleadings be **GRANTED IN PART AND DENIED IN PART**.[2] Defendants' objections are **OVERRULED** and motions to strike are **DENIED**.

## I.  Case Background

Plaintiff filed this lawsuit to prevent the foreclosure of her property located at 4003 Feagan Street, Unit One, Houston, Texas (the "Property").

### A.  Factual Background

On January 1, 2007, Plaintiff purchased the Property from Countrywide Home Loans Inc.[3] Plaintiff paid a $60,000 down payment and entered into a $240,000 mortgage loan ("the Loan") with New Century Mortgage Corporation ("NCMC").[4] A deed of trust ("the Deed

---

[2]    BSI, Christiana Trust, and Carrington's Motion for Judgment on the Pleadings (Doc. 132) is moot. Plaintiff's Motion for Summary Judgment and for Temporary Judgment (Doc. 140) is moot.

[3]    See Doc. 52-1, Ex. C to BSI, Carrington, and Christiana Trust's ("Movants") Mot. for Summ. J. The Property Sale Contract.

[4]    See id. p. 1; Doc. 58-1, Ex. A to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 2 of 42 (Mortgage Loan). Due to the style of Plaintiff's exhibits, when citing to Plaintiff's documents, the court will pincite to the pagination as it appears in the top right corner of each ECF document, not the page number within each exhibit.

of Trust") naming Eldon L. Youngblood ("Youngblood") as trustee and in favor of NCMC secured the Loan.[5]  On February 8, 2007, the property was conveyed through a special warranty deed from the "Bank of New York as Trustee for the Certificate Holders CWABS, Inc. Asset-Backed Certificates, Series 2006-4", to Plaintiff.[6]

On March 28, 2007, Plaintiff received notice that NCMC had transferred the servicing of her account to HomeEq Sevicing ("HomeEq").[7]  In May 2009, Plaintiff and HomeEq entered a modification agreement (the "Modification Agreement") whereby: (1) the Loan's outstanding balance was adjusted to $261,182.32 to reflect the capitalization of past due amounts; (2) Plaintiff's total monthly payment was adjusted to $2,387.29;[8] and (3) the Loan's interest rate was adjusted to 5.750% and subject to change during the modification term "as long as the change result[ed] in an interest rate that is lesser or equal to [5.750%.]"[9]  The interest rate was capped at 5.750% until April 1, 2014.[10]

---

[5]    See Doc. 58-1, Ex. B to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 6-22 of 42 (Deed of Trust).

[6]    See Doc. 52-1, Ex. D to Movants' Mot. for Summ. J., Special Warranty Deed.

[7]    See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 24-25 of 42 (Notice of Transfer of Servicing).

[8]    The new payment reflected a principal and interest payment of $1567.55 and an escrow payment of $819.74.

[9]    See Doc. 58-1, Ex. D to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 39-42 of 42 (Modification Agreement).

[10]    See id.

On April 29, 2010, HomeEq notified Plaintiff that servicing of her loan was being transferred to BSI.[11]  On September 23, 2010, BSI returned a check to Plaintiff stating that her account was in foreclosure and her check was not enough to reinstate the account.[12]  On September 27, 2010, BSI sent Plaintiff a letter stating that it would accelerate the balance of the Loan if she did not pay $8,930.30 by November 1, 2010.[13]  Plaintiff protested the alleged amount owed and requested that BSI explain the amount demanded.[14]  Plaintiff was told to apply for a loan modification.[15]  Plaintiff alleges that during the loan modification review her payments were rejected.[16]  On November 23, 2010, Plaintiff's loan modification application was denied.[17]  On November 30, 2010, BSI informed Plaintiff that she would have to pay $13,777.72 plus attorney's fees and costs in order to bring her account out of foreclosure.[18]  Plaintiff consistently took issue with the amount that BSI

---

[11]    See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 26-29 of 42 (April 29, 2010 Letter).

[12]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 2 of 73 (Sept. 23, 2010 Letter).

[13]    See id. p. 3 of 73 (Sept. 27, 2010 Letter).

[14]    See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 18-20 of 29 (Emails Between Pl. and BSI).

[15]    See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 5.

[16]    See id. p. 6.

[17]    See Doc. 59-2, Ex. H. to Pl.'s Resp. to Movants' Mot. for Sum. J. p. 17 of 29 (Modification Denial).

[18]    See id. p. 18 of 29 (Nov. 30, 2010 Emails).

4

demanded.[19]   Plaintiff alleges that on December 20, 2010, BSI demanded a payment of $17,479.19 or her home would be foreclosed.[20]

Also on December 20, 2010, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for NCMC, removed Youngblood as trustee and appointed "Jeff Leva, Audrey Lewis, Theresa Perales or Sandy Dasigenis, Deborah Schwartz, Naomi Feistel or either one of them" as substitute trustees.[21]   On December 28, 2010, a document was executed that purportedly assigned the Deed of Trust from NCMC to MERS, acting as nominee for NCMC, to be effective as of November 4, 2010.[22]   On December 29, 2010, MERS, acting as nominee for NCMC, assigned the Deed of Trust to The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust ("New York Mellon Trust"), to be effective as of December 3, 2010.[23]

On December 29, 2010, Plaintiff paid BSI $17,479.19, but claims that the payment was made under duress.[24]   On January 7,

---

[19]      See id. pp. 18-20 of 29 (Emails Between Pl. and BSI).

[20]      See id.; Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 7. Plaintiff's supporting evidence appears to cut off before showing the total BSI demanded.

[21]      See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 60 of 73 (Appointment of Substitute Trustee).

[22]      See id. pp. 63-64 of 73 (Dec. 28, 2010 Assignment of the Deed of Trust).

[23]      See id. pp. 61-62 of 73 (Dec. 29, 2010 Assignment of the Deed of Trust).

[24]      See id.; Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 13-14 of 47 (Dec. 29, 2010 Payment).

2011, BSI executed a notice of rescission of the acceleration of the Loan.[25]

Two days later, on January 17, 2011, BSI demanded that Plaintiff pay $2,672.49, which included a late fee of $366.35.[26] Pursuant to the terms of the Loan, the Movants were only authorized to charge Plaintiff a late fee equal to five percent of the overdue payment of principal and interest, and the late fee could only be charged once per late payment.[27]  Two days later, on January 19, 2011, Plaintiff received a statement from BSI that indicated she owed $4,690.66, which included late charges of $78.38.[28]  The statement also indicated that Plaintiff had only paid $17,179.85 since December 19, 2010, despite her December 29 payment of $17,479.19, and that BSI had received a partial payment of $1,604.92.[29]

On another January 19, 2011 statement, BSI demanded that Plaintiff pay $3,085.74 by February 16, 2011.[30]  Plaintiff claims

---

[25]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 4-7 of 73 (Jan. 7, 2011 Notice of Rescission).

[26]    See id. p. 8 of 73 (Jan. 17, 2011 Payment Reminder).

[27]    See Doc. 58-1, Ex. A to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 4 of 42 (The Loan).

[28]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 9 of 73 (Jan. 19, 2011 Statement).

[29]    See id.

[30]    See id. p. 10 of 73 (2nd Jan. 19, 2011 Statement).  This statement appears to reflect Plaintiff's partial payment ($4,690.66 - $1,604.92 = $3,085.74).

that on January 26, 2011, due to the multiple inconsistent statements of BSI, she made a normal payment of $2,306.84.[31]

On February 6, 2011, Plaintiff made a payment of $778.90, believing that amount would bring her current through February 2011.[32] On February 16, 2011, BSI demanded that Plaintiff pay $3,676.94, which included unpaid late fees of $1,370.80.[33] On March 9, 2011, Plaintiff's escrow account was terminated and she was issued a balance refund check of $191.14.[34]  On March 13, 2011, Plaintiff made a payment of $1,550 "[d]ue to inconsistent Loan Billing Statements, Payment Reminders and abrupt and lack of any kind of notification of escrow cancelation."[35]  On March 16, 2011, BSI demanded a payment of $3,016.73, including $1,449.18 in late fees.[36]

On May 12, 2011, Plaintiff made a payment of $1,560, and, on

---

[31]    See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 8.  As support, Plaintiff cites to a payment history table. As the source of the table is unclear, the court cannot definitively say that this payment was made.

[32]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 17 of 47 (Feb. 6, 2011 Payment).  Plaintiff calculated her payment as follows: ($2,306.14 (Monthly Payment) + $78.38 (Jan. Late Fee)) – ($1,604.92 (Surplus from Partial Payment) + $0.70 (Overpayment on Jan. Payment)) = $778.90.

[33]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 11 of 73 (Feb. 16, 2011 Payment Reminder).

[34]    See Doc. 58-4, Ex. M to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 16-17 of 51 (Escrow Termination).

[35]    See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 16-17 of 47 (March 13, 2011 Payment & Letter).

[36]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12 of 73 (March 16, 2011 Payment Reminder).

June 17, 2011, Plaintiff made a payment of $1,567.55.[37]  On July 8, 2011, and August 8, 2011, Plaintiff made payments of $1,570.[38]  On August 8, 2011, BSI demanded a payment of $3,330.25, which included $1,762.70 for unpaid late fees.[39]  On the following dates Plaintiff made payments of $1,570: (1) September 8, 2011; (2) October 7, 2011; (3) November 8, 2011; and (4) December 8, 2011.[40]  Throughout this time period, BSI continued to make payment demands ranging from $3,527.01 to $3,618.24 that included unpaid late fees ranging from $1,959.46 to $2,050.69.[41]

On January 18, 2012, BSI sent Plaintiff a letter indicating that she needed to pay $5,264.17 within fifteen days or it would commence the foreclosure process.[42]  On February 2, 2012, Plaintiff made a payment of $1,570, which was returned the same day because her account was in foreclosure and the amount was not enough to reinstate the account.[43]  On February 14, 2012, BSI sent Plaintiff

---

[37]     See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 18–19 of 47 (2011 Payments).

[38]     See id.

[39]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 13 of 73 (Aug. 29, 2011 Past Due Notice).

[40]     See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 21–22 of 47 (Email).

[41]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 11–16 of 73 (2011 Past Due Notices and Payment Reminders).

[42]     See id. p. 17 of 73 (Jan. 18, 2012 Letter).

[43]     See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 23 of 47 (Return Letter).

a demand for payment and notice of its intent to accelerate.[44]  The
notice demanded that Plaintiff pay $7,467.02 by March 15, 2012, or
the Loan would be accelerated and the Property would be posted for
a foreclosure sale.[45]

On March 16, 2012, Plaintiff filed a lawsuit against Protium
Master Grantor Trust, Prommis Solutions, and BSI, in state court to
prevent the foreclosure of the Property.  See Cao v. Protium Master
Grantor Trust, et al., Civ. Act. No. 2012-16143 (165th Dist. Ct.,
Harris County, Tex. Mar. 16, 2012).  On the same day, the state
court granted Plaintiff a temporary restraining order that
restrained the state court defendants from: (1) accelerating or
threatening to accelerate the balance of the Loan and refusing to
accept payments; (2) posting the Loan for foreclosure or
foreclosing on the Property under any provision of the Deed of
Trust; and (3) demanding any sum of money over the principal and
interest and late fee set out in the Loan if payment was not made
within fifteen days of the due date.[46]  On March 29, 2012, the
parties to the state court lawsuit entered into a Mediated Rule 11
Agreement requiring that: (1) Plaintiff pay $6,270.20 for four
payments of principal and interest; (2) Plaintiff make principal

---

[44]     See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
19-21 of 73 (Demand & Notice of Intent to Accelerate).

[45]     See id. p. 20 of 73.

[46]     See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
36-37 of 47 (Temporary Restraining Ord.).

and interest and late fee payments under the terms of the Loan beginning May 1, 2012; (3) Defendant not accelerate the Loan or post the Property for foreclosure for the pendency of the lawsuit as long as Plaintiff made her payments; (4) the parties not take any action in the case for 90 days while they attempted to resolve the dispute.[47]   Plaintiff made a payment of $6,270.20 on March 31, 2012.[48]   Plaintiff made a payment of $1,570 on April 6, 2012.[49]

On May 16, 2012, apparently in direct violation of the Rule 11 Agreement, BSI sent Plaintiff a payment reminder stating that she owed $7,471.44, which included $4,892.91 in late fees.[50]   On the 6th of June, July, and August of 2012, Plaintiff made a payment of $1,570.[51]   On August 9, 2012, BSI sent Plaintiff a notice of default and intent to accelerate.[52]   The letter stated that Plaintiff owed $13,532.74, which included $1,266.91 in late fees and $4,530.24 in "Other Fees."[53]   The letter also demanded that Plaintiff pay $13,532.74 within thirty days or the Loan would be accelerated and

---

[47]   See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 38-39 of 47 (Mediated Rule 11 Agreement).

[48]   See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 26 of 47 (March 31, 2012 Payment).

[49]   See id. p. 27 of 47 (April 6, 2012 Payment).

[50]   See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 22 of 73 (May 16, 2012 Payment Reminder).

[51]   See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 29-31 of 47 (June, July, & August 2012 Payments).

[52]   See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 23-25 of 73 (August 9, 2012 Notice of Default).

[53]   See id.

foreclosure proceedings would begin.[54]  On September 6, 2012, Plaintiff made a payment of $1,570.[55]

On September 14, 2012, the Loan was sold to Christiana Trust.[56] On September 20, 2012, Plaintiff was sent a Fair Debt Collection Practices Act Notice from New York Mellon Trust and BSI.[57]  The notice stated that Plaintiff owed $257,630.28 and that the Property would be foreclosed on soon if Plaintiff did not rectify the default.[58]  Plaintiff claims that she responded by sending proof of her timely payments and a copy of the temporary restraining order.[59]

On November 2, 2012, a letter was sent to Plaintiff notifying her that servicing of the Loan was transferred from BSI to Carrington, effective on October 21, 2012.[60]  Plaintiff claims that on November 6, 2012, BSI refused Plaintiff's timely November payment, and that on December 11, 2012, she notified Carrington of the "incorrect charges, misapplication of payments, the pending lawsuit and provided proof of such payments and the Rule 11

---

[54]  See id.

[55]  See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 32 of 47 (September 6, 2012 Payment).

[56]  See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot for Summ. J. P. 29-31 of 42 (Notice of Sale).

[57]  See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 26-28 of 73 ("FDCPA Notice Letter").

[58]  See id.

[59]  See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12.

[60]  See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 32-34 of 42 (Notice of Servicing Transfer).

Agreement."[61]

On February 11, 2013, Plaintiff sent a cashier's check for $7,837.75 to Carrington in an attempt to make payments for November 2012 through March 2013.[62]  On February 13, 2013, Plaintiff was notified that her payment was being rejected because it did not represent the total amount owed to cure her default.[63]  On February 15, 2013, Carrington notified Plaintiff that she owed $27,223.69 for overdue payments dating back to June 2012 as well as outstanding late fees and other charges.[64]  In a statement dated February 18, 2013, Carrington demanded that Plaintiff pay $28,900.44, which included $1,815.50 in late fees and $5,220.24 in "Default Cost(s)."[65]  On February 26, 2013, Plaintiff notified Carrington of the disputed amounts, the Rule 11 Agreement, and payments that had been made but not accounted for.[66]

On April 3, 2013, Carrington notified Plaintiff that it was unable to research or validate the alleged issues associated with BSI's servicing of the Loan and that servicing of the Loan had been

---

[61]    See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 12.

[62]    See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 24 of 29 (February, 26, 2013 Letter).

[63]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 29 of 73 (February 13, 2013 Letter).

[64]    See id. pp. 30-32 of 73 (February 15, 2013 Letter).

[65]    See id. p. 33 of 73 (February 18, 2013 Statement).

[66]    See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 24 of 29 (February, 26, 2013 Letter).

transferred to Carrington with the June 2012 payment due.[67] Carrington also stated that it would not adhere to the terms of the Rule 11 Agreement because it was no longer valid.[68] On April 18, 2013, Carrington sent a statement to Plaintiff that stated she owed $32,921.44, which included $1,972.24 in late fees and $5,887.74 in "Default Cost(s)."[69] On February 18, 2014, Carrington sent Plaintiff a statement that showed she owed $53,871.23, which included $2,755.94 in late fees and $8,930.64 in "Default Costs."[70]

On July 24, 2014, Plaintiff was notified that servicing of the Loan had been transferred from Carrington back to BSI and that the creditor on the loan was "OakTree."[71] On September 18, 2014, BSI sent Plaintiff a statement that she pay $87,871.50, which included $12,763.47 in fees and charges.[72] On November 10, 2014, Plaintiff was notified that the July 24, 2014, letter had incorrectly identified OakTree as the creditor where the creditor was still Christiana Trust.[73] On October 19, 2015, BSI sent Plaintiff a

---

[67]   See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 25 of 29 (April 3, 2013 Letter).

[68]   See id.

[69]   See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 34 of 73 (April 18, 2013 Statement).

[70]   See id. p. 35 of 73 (February 18, 2014 Statement).

[71]   See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 35 of 42 (July 24, 2014 Notice).

[72]   See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 39 of 73 (Sept. 18, 2014 Statement).

[73]   See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 36 of 42 (Nov. 10, 2014 Notice).

demand for $129,530.10, which included $20,184.88 in fees and charges.[74]

On or about October 26, 2015, the parties to the state court lawsuit attended mediation.[75] At mediation, the parties signed an agreement (the "Settlement Agreement") wherein: (1) Plaintiff would apply for a HAMP loan and dismiss her lawsuit without prejudice by November 6, 2015; (2) BSI and OakTree[76] would agree to not foreclose on the Property while the HAMP loan was being processed or during the HAMP loan's trial period if it was approved; (3) if the HAMP loan was not approved, BSI would notify Plaintiff and Oak Tree would not foreclose on the Property until February 2, 2016; and (4) Plaintiff and BSI would file a motion for nonsuit without prejudice by November 6, 2015, and the motion would be prepared by BSI's counsel.[77] Plaintiff claims that the mediator assured her that an impasse would be documented and that the Settlement Agreement was an offer, not a settlement.[78]

On November 4, 2015, after Plaintiff refused to sign her copy of the motion to dismiss prepared by BSI's counsel, the state court

---

[74]   See See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 43 of 73 (Oct. 19, 2015 Statement).

[75]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 15.

[76]   It is not clear how Oak Tree had standing to foreclose on the Property given the November 10, 2014 notification.

[77]   See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 40-41 of 47 (The Settlement Agreement).

[78]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J. p. 15.

14

defendants filed a motion to dismiss.[79]  On November 13, 2015, the state court enforced the settlement agreement and dismissed the case without prejudice.[80]   On December 21, 2015, the Dispute Resolution Center filed an amended document noting that the case had previously been reported as "impasse," but settled after mediation.[81]   Notably, it is unclear from the summary judgment record whether the parties actually settled at mediation or why Plaintiff signed an agreement that was, as she alleges, merely an offer.

On July 29, 2016, the Deed of Trust was assigned from New York Mellon Trust to Christiana Trust.[82] On October 6, 2016, Christiana Trust removed all trustees on the Deed of Trust and named "Jeff Leva or Lillian Poelker or Sandy Dasigenis or Patricia Poston or David Poston or Megan Randle-Bender or Rebecca Bolton or Paul A. Hoefker or Robert L. Negrin" as substitute trustees.[83]

On November 29, 2016, Plaintiff was notified that pursuant to the February 14, 2012 Notice, the maturity date of the Loan was

---

[79]    See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 42-43 of 47 (Motion to Dismiss).

[80]    See id. p. 44 of 47 (Order of Dismissal).

[81]    See id. p. 45 of 47 (Amended ADR Doc.).

[82]    See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 65 of 73 (Assignment of Deed of Trust).

[83]    See id. p. 67 of 73 (Appointment of Substitute Trustee).

accelerated and the total amount due was $397,615.43.[84]  Plaintiff
was also sent a notice of a substitute trustee's sale that would
take place on January 3, 2017.[85]  On December 19, 2016, BSI sent
Plaintiff a statement demanding $187,566.28, which included
$26,558.33 in fees and other charges.[86]  On December 28, 2016,
Plaintiff filed the present suit in state court, and on December
29, 2016, Plaintiff's application for a temporary restraining order
was granted.[87]

On September 8, 2017, Christiana Trust assigned the Deed of
Trust to Series 1 of Normandy Mortgage Depositor Company, LLC
("Normandy Mortgage").[88]  On September 13, 2017, the Deed of Trust
was assigned from Normandy Mortgage to Wilmington Savings Fund
Society, FSB, d/b/a Christiana Trust as Trustee for Normandy
Mortgage Loan Trust, Series 2017-1.[89]  On March 10, 2018, Plaintiff
received a notice of changes to her mortgage interest rate and
payments that stated her new payment would be $2,921.88 and her
loan balance was $211,252.68 with a remaining loan term of 227

---

[84]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
45-46 of 73 (Notice of Acceleration).

[85]    See id. pp. 47-48 of 73 (Notice of Substitute Trustee's Sale).

[86]    See id. p. 55 of 73 (Dec. 19, 2016 Statement).

[87]    See Doc. 58-3, Ex. J to Pl.'s Resp. to Movants' Mot. for Summ. J. pp.
46-47 of 73 (2016 Temporary Restraining Order).

[88]    See Doc. 58-2, Ex. F to Pl.'s Resp. to Movants' Mot. for Summ. J. p.
70 of 73 (Sept. 8, 2017 Assignment of the Deed of Trust).

[89]    See Doc. 52-1, Ex. I to Movants' Mot. for Summ. J. p. 82 of 113
(Assignment of Deed of Trust).

months.[90]

On July 26, 2018, Plaintiff received notice that the Loan had been sold to MTGLQ on June 29, 2018.[91] On August 2, 2018, servicing of the Loan was transferred to Selene.[92]  On September 6, 2018, Christiana Trust filed a notice of rescission of acceleration.[93] On September 27, 2018, Selene sent Plaintiff a notice of default and intent to accelerate stating that she must pay $253,127.92 to cure her default, which included $1,110.17 in late charges and $21,184.17 in "Corporate Advance Balance."[94]  The notice indicated that Plaintiff's total debt was $437,665.20.[95]

On November 15, 2018, Selene sent Plaintiff another notice of default and intent to accelerate stating that she must pay $260,666.62 to cure her default, which included $1,110.17 in late charges and $21,197.67 in "Corporate Advance Balance."[96]  The notice indicated that Plaintiff's total debt was $439,094.40.[97]

---

[90]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. pp. 52-54 of 73 (March 10, 2018 Notice).

[91]    See Doc. 58-1, Ex. C to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 38 of 42.

[92]    See Doc. 52-1, Ex. J to Movants' Mot. for Summ. J. p. 99 of 113 (Notice of Servicing Transfer).

[93]    See Doc. 1-4, Ex. 5 to Pl.'s Orig. Compl. p. 38 of 53 (Notice of Rescission of Acceleration).

[94]    See Doc. 139-9, Ex. 21 to Pl.'s Mot. for Summ. J., Not. of Default and Intent to Accelerate pp. 35 of 49.

[95]    See id.

[96]    See id. p. 38 of 49.

[97]    See id.

On February 27, 2019, Plaintiff filed another lawsuit in state court against Selene and MTGLQ; a temporary restraining order was granted the same day.[98]   Plaintiff has repeatedly disputed the amount she owes and attempted to resolve her issues with Selene directly.[99]   On March 21, 2019, through counsel, Selene sent Plaintiff a notice that the maturity date of the Loan had been accelerated and that a trustee's sale would take place on May 7, 2019.[100]

On May 7, 2019, the scheduled trustee's sale took place and MTGLQ purchased the Property with a purported credit bid of $463,180.05.[101]

## B.   **Procedural Background**

Plaintiff filed this lawsuit in state court on December 28, 2016, against BSI and Christiana Trust.[102]   On February 1, 2017, the lawsuit was removed to this court.[103]   On May 12, 2017, Plaintiff filed an amended complaint, without leave of the court, adding

---

[98]   See id.; Doc. 1-5, Temp. Restraining Ord.

[99]   See Doc. 1-4, Exs. 7 & 8 to Pl.'s Orig. Compl. pp. 43-47 of 53.

[100]   See Doc. 145-8, Ex. 1-G to MTGLQ and Selene's Resp. to Pl.'s Mot. for Summ. J., Not. of Acceleration and Trustee's Sale.

[101]   See Doc. 145-9, Ex. 1-H to MTGLQ and Selene's Resp. to Pl.'s Mot. for Summ. J., Trustee's Deed.

[102]   See Doc. 1-1, Ex. A to Not. of Removal p. 2 of 110 (Pl.'s Orig. Pet.).   It appears that Plaintiff incorrectly named the parties, but intended that the lawsuit be against BSI and Christiana Trust.   The court is proceeding on the understanding that BSI and Christiana Trust are the correct parties.

[103]   See Doc. 1, Not. of Removal.

18

First American Title Insurance Company ("First American"), Carrington, and Jason Vasek.[104] On November 6, 2017, First American and Vasek were dismissed from the lawsuit.[105]

On September 17, 2018, the Movants filed their pending motion for summary judgment.[106] Plaintiff filed her pending motion for summary judgment and a response to the Movants' motion on October 17, 2018.[107]

On February 27, 2019, Plaintiff filed another lawsuit in state court against Selene and MTGLQ.[108] On March 4, 2019, Plaintiff's second lawsuit was removed to this court.[109] On March 25, 2019, Plaintiff's second lawsuit was consolidated into her first lawsuit forming the present lawsuit.[110]

On June 21, 2019, Plaintiff filed her Third Amended Complaint.[111] On June 24, 2019, Plaintiff sought the court's leave to add a wrongful foreclosure claim to her Third Amended

---

[104]   See Doc. 15, Pl.'s 1st Am. Compl.

[105]   See Doc. 38, Ord. Dated Nov. 6, 2017.

[106]   See Doc. 52, Movants' Mot. for Summ. J.

[107]   See Doc. 58, Pl.'s Resp. to Movants' Mot. for Summ. J.

[108]   See Doc. 1-4 in 4:19-cv-00769, Ex. C-1 to Not. of Removal, Pl.'s Orig. Pet.

[109]   See Doc. 1 in 4:19-cv-00769, Not. of Removal.

[110]   See Doc. 68, Ord. Dated Mar 25, 2019.

[111]   See Doc. 115, Pl.'s 3rd Am. Compl.

Complaint.[112]   The court granted Plaintiff's motion for leave on July 18, 2019.[113]   Plaintiff's Third Amended Complaint and the supplemented wrongful foreclosure claim comprise the live pleadings in this lawsuit.

On November 25, 2019, Defendants BSI, Carrington, and Christiana Trust filed their pending motion for judgment on the pleadings.[114]   On November 27, 2019, Defendants MTGLQ and Selene filed their pending motion for summary judgment and judgment on the pleadings.[115]   On November 29, 2019, BSI, Carrington, and Christiana Trust filed their pending motion for summary judgment.[116]   On December 2, 2019, Plaintiff filed her pending motion for summary Judgment.[117]   On December 19, 2019, MTGLQ and Selene filed their pending objections to and motion to strike Plaintiff's summary judgment evidence.[118]   On December 23, 2019, BSI, Carrington, and Christiana Trust filed their pending objections to and motion to

---

[112]   See Doc. 116, Pl.'s Mot. for Leave.  Plaintiff's wrongful foreclosure claim is contained within the Motion for Leave.

[113]   See Doc. 121, Ord. Dated July 18, 2019.

[114]   See Doc. 133, BSI, Carrington, and Christiana Trust's Mot. for J. on the Pleadings.

[115]   See Doc. 135, MTGLQ and Selene's Mot. for Summ. J. and J. on the Pleadings.

[116]   See Doc. 136, BSI, Carrington, and Christiana Trust's Mot. for Summ. J.

[117]   See Doc. 139, Pl.'s Mot. for Summ. J.

[118]   See Doc. 146, MTGLQ and Selene's Objs. to and Mot. to Strike Pl.'s Summ. J. Evid.

strike Plaintiff's summary judgment evidence.[119]  On January 7,
2020, MTGLQ and Selene filed their pending motion to strike
Plaintiff's declaration.[120]  On January 10, 2020, BSI, Carrington,
and Christiana Trust filed their pending motion to strike
Plaintiff's declaration.[121]  On February 14, 2020, Plaintiff filed
her pending motion for preliminary injunction.[122]  The parties have
filed responses and replies to these motions and they are ripe for
the court's review.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists on any material fact and the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v.
Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a
fact that is identified by applicable substantive law as critical
to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal
Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine,
the dispute regarding a material fact must be supported by evidence

---

[119]    See Doc. 147, BSI, Carrington, and Christiana Trust's Objs. to and
Mot. to Strike Pl.'s Summ. J. Evid.

[120]    See Doc. 155, MTGLQ and Selene's Objs. to and Mot. to Strike Pl.'s
Decl.

[121]    See Doc. 156, BSI, Carrington, and Christiana Trust's Mot. to Strike
Pl.'s Decl.

[122]    See Doc. 158, Pl.'s Mot. for Preliminary Injunction.

such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

Plaintiff alleges the following claims against Defendants: (1) fraud; (2) statutory fraud; (3) usury; (4) slander of title and cloud on title to real estate; (5) violation of Texas Civil Practices and Remedies Code Section 12.002 ("Section 12.002"); (6) negligence per se; (7) gross negligence per se; (8) breach of contract; (9) unfair debt collection practices; (10) violation of

22

Texas Civil Practices and Remedies Code Section 16.035 ("Section 16.035"); (11) conspiracy; (12) civil theft, conversion, and money had and received; (13) duress; (14) fraudulent transfers; and (15) wrongful foreclosure.  All parties move for judgment on all of Plaintiff's claims.

## A.    Objections and Motions to Strike

Defendants argue that all of Plaintiff's evidence should be struck because it: (1) is unauthenticated; (2) was filed untimely; (3) is irrelevant; (4) is disorganized; (5) is hearsay; and (6) was created by Plaintiff.  Plaintiff filed a declaration in response to Defendants' objections to her summary judgment evidence. Defendants also argue that Plaintiff's declaration should be struck because it: (1) was filed untimely; (2) contains conclusory statements; (3) contains hearsay; (4) contains irrelevant statements; and (5) globally authenticates evidence from the internet or unknown sources.  Additionally, Defendants urge the court to strike Plaintiff's motions to the extent they rely on facts that were only mentioned in her live complaint.

At the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

### 1.    Authentication

Defendants argue that Plaintiff has failed to authenticate her summary judgment evidence.  However, Plaintiff could present

23

documents that are "unauthenticated" in a form that would be admissible at trial by testifying that the documents are true and correct copies. Additionally, in her declaration, Plaintiff stated that all of her attached documents were true and correct copies. Defendants' objections on these grounds are **OVERRULED.**

### 2.   Untimeliness

Plaintiff's first motion for summary judgment was filed timely; her pending amended motion for summary judgment was not. However, her second motion was better organized and, in the interests of judicial economy, the court will consider Plaintiff's late filing.   Defendants' objections on these grounds are **OVERRULED.**

### 3.   Irrelevance and Unreliable Sources

The court does not consider any documents that are irrelevant, obtained from the internet or unknown sources, or created by Plaintiff.   Thus, Defendants' objections on those grounds are **DENIED AS MOOT.**

### 4.   Disorganization

While Plaintiff's filings have been disorganized since the start of this lawsuit, the court has previously set out the majority of the factual background of this lawsuit with citation to evidence contained in the record.[123]   The court finds no merit in Defendants' suggestion that they could not understand Plaintiff's

---

[123]   See Doc. 92, Mem. & Recom. Dated May 6, 2019.

filing because it was disorganized.  Defendants' objections on these grounds are **OVERRULED**.

### 5.   Hearsay

Regarding Defendants' hearsay objections, the court considers them only with respect to the evidence the court actually considered.  The court primarily relied upon documents created by Defendants and sent to Plaintiff.  "Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  See Fed. R. Evid. 801(c).  Most if not all of the statements and other documents the court has considered are not being offered to prove the truth of the matter asserted therein.  In fact, Plaintiff expressly argues that most of these documents incorrectly claimed that Plaintiff owed an amount that she did not actually owe or stated that she was in default when she was not.

Further, to the extent they are hearsay, that does not mean Plaintiff could not present their contents at trial in an admissible form.  Defendants' objections on these grounds are **OVERRULED**.

### 6.   Plaintiff's Declaration

Regarding Plaintiff's declaration, the court has only considered Plaintiff's statement that all her exhibits are true and correct copies of documents served on Plaintiff by Defendants.  The

court also assumes that the statement was intended to apply to documents cited in all pleadings filed by Plaintiff. Defendants object to the statement on the grounds that it authenticates documents that are from "unknown" sources or created by Plaintiff.

As stated earlier, the court only considers this statement to authenticate documents provided to Plaintiff by Defendants and does not consider it to globally authenticate all of Plaintiff's purported evidence. Defendants' other objections are **DENIED AS MOOT** as the court did not rely on the objected-to portions of the declaration.

## B.   Statute of Limitations

Defendants argue that all of Plaintiff's claims are barred by the statute of limitations. Plaintiff argues that the applicable statutes of limitation are tolled under various doctrines.

### 1.   Tolling

Plaintiff argues that her claims were filed within the statute of limitations on the following bases: (1) the continuing tort doctrine; (2) revival; (3) Texas Civil Practice and Remedies Code Section 16.068 ("Section 16.068"); (4) Texas Civil Practice and Remedies Code Section 16.069 ("Section 16.069"); (5) estoppel; (6) the discovery rule; and (7) fraudulent concealment.[124]  The court will consider whether any statute of limitations should be tolled before addressing Plaintiff's claims.

---

[124]    See Doc. 139, Pl.'s Mot. for Summ. J. pp. 72-76.

### i.    The Continuing Tort Doctrine

The Texas Supreme court has not endorsed or addressed the continuing tort theory. <u>Exxon Mobil Corp. v. Rincones</u>, 520 S.W.3d 572, 592 (Tex. 2017).  "Under the continuing tort doctrine, the cause of action is not complete and does not accrue until the tortious acts have ceased." <u>BNSF Ry. Co. v. Acosta</u>, 449 S.W.3d 885, 894 (Tex. App.—El Paso 2014, no pet.)(internal quotation marks omitted)(quoting <u>In re FEMA Trailer Formaldehyde Products Liab. Litig.</u>, 646 F.3d 185, 191 (5th Cir.2011).  "The doctrine of continuing tort, with its extension of accrual date, is rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury." <u>Rincones</u>, 520 S.W.3d at 592.  "[C]are must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tort[i]ous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not." <u>Rogers v. Ardella Veigel Inter Vivos Tr. No. 2</u>, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied)(citing <u>Dickson Constr., Inc. v. Fidelity & Deposit Co.</u>, 960 S.W.2d 845, 851 (Tex. App.-Texarkana 1997, no pet.)).

The continuing tort theory would not apply to the present scenario.  First, based on her correspondence with BSI, in late 2010, Plaintiff knew of the allegedly wrongful conduct that underpinned her lawsuit. On March 16, 2012, as a result of the

allegedly wrongful conduct, Plaintiff filed a lawsuit in state court. Plaintiff cannot claim an inability to know that Defendants' ongoing conduct was causing her injury. Therefore, the continuing tort theory does not apply to Defendants' wrongful conduct. See e.g., Rincones, 520 S.W.3d at 592.

Second, Plaintiff experienced a continuing injury from one wrongful act, not repeated injury. For example, in Rogers v. Ardella Veigel Inter Vivos Tr. No. 2, a Texas Court of Appeals found that the periodic collection of fees by a bank as the purported trustee of a nonexistent trust was not a continuing tort. Rather, the plaintiff's injury arose from the bank's single act of usurping control as trustee over the plaintiff's property. Rogers v. Ardella Veigel Inter Vivos Tr. No. 2, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied). Here, Defendants repeatedly attempted to collect fees that Plaintiff claims they were not entitled to receive, wrongfully accelerated the Loan, and wrongfully foreclosed on the Property. All of these actions stem from Defendants' alleged breach of contract in January 2011, when they are alleged to have overcharged Plaintiff. Accordingly, the continuing tort doctrine does not toll the statute of limitations on Plaintiff's claims. See id.; see also Christerson v. Speer, 01-16-00469-CV, 2017 WL 1520449, at *7 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied)(holding that monthly loan payments and later demands were not conduct constituting a

28

continuing tort where they stemmed from an earlier alleged breach of contract).

### ii.  Revival

The court next considers whether Defendants' actions during the foreclosure process repeatedly revived the statute of limitations. In <u>Christerson v. Speer</u>, a Texas Court of Appeals considered a similar situation. <u>Christerson v. Speer</u>, 01-16-00469-CV, 2017 WL 1520449, at *6–7 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied). <u>Id.</u> In <u>Christerson</u>, the plaintiffs signed closing documents that differed from the terms of a real estate financing agreement made with the defendant. <u>Id.</u> The <u>Christerson</u> court found that the plaintiffs' claims began to accrue when they signed the closing documents and the statute of limitations was not revived each time they made a payment or each time the defendant made a demand for payment. <u>Id.</u>

Here, as in <u>Christerson</u>, the statute of limitations for Plaintiff's claims was not reset each time Defendants made an inaccurate demand.

### iii.  Sections 16.068 and 16.069

Section 16.068 states:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

29

Section 16.069 states:

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

Plaintiff's limitations issues do not arise based on any amendment or supplement to a previously filed pleading. Plaintiff's limitations defense also does not relate to a counterclaim or cross claim. Plaintiff's present problem is that her lawsuit was filed well after disputes arose as to the correctness of amounts demanded by Defendants. To the extent Plaintiff is arguing that Sections 16.068 and 16.069 allow her present lawsuit to relate back to her previous lawsuit, that argument fails.

### iv. Estoppel

"Estoppel may bar a limitations defense when a party, or its agent or representative, makes representations that induce plaintiffs to delay filing suit within the applicable limitations period." Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837, 849 (Tex. App.—Houston [1st Dist.] 1998). Plaintiff argues that because her first lawsuit was dismissed based on an unenforceable settlement agreement, the statute of limitations for her claims was tolled under the estoppel doctrine. First, Plaintiff has not explained how Defendants made any representations that induced her to delay the filing of this lawsuit. Second, Plaintiff's remedy for the wrongful dismissal of her first lawsuit was to appeal that

dismissal, which Plaintiff failed to do.   Defendants are not estopped from asserting a statute of limitations defense.

### v.   The Discovery Rule

The discovery rule "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." Computer Associates Intern., Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996)(citing Trinity River Auth. v. URS Consultants, 889 S.W.2d 259, 262 (Tex. 1994)).   "[I]n order for the Texas discovery rule to apply, the injury must be (1) 'inherently undiscoverable' and (2) 'objectively verifiable.'" Brandau v. Howmedica Osteonics Corp., 439 Fed. App'x 317, 321 (5th Cir. 2011)(citing Barker v. Eckman, 213 S.W.3d 306, 312 (Tex. 2006)).

As discussed above, Plaintiff knew of the allegedly wrongful conduct that formed the basis of her lawsuit and even filed a lawsuit challenging that conduct in March 2012.   Additionally, nothing about Plaintiff's alleged injuries was "inherently undiscoverable" because she was sent and received payment demands for the allegedly incorrect amounts.   The discovery rule does not apply to the present undisputed facts.

### vi.   Fraudulent Concealment

In order to toll the statute of limitations based on fraudulent concealment, a plaintiff must show that the defendant: (1) knew a wrong occurred; (2) "had a fixed purpose to conceal the

wrong[;]" and (3) concealed the wrong.  Shell Oil Co. v. Ross, 356
S.W.3d 924, 927 (Tex. 2011).  Fraudulent concealment "only tolls
the statute of limitations until 'the fraud is discovered or could
have been discovered with reasonable diligence.'"  Id. (quoting BP
Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 67 (Tex. 2011)).  Here,
even if the court assumed that Plaintiff had provided evidence of
the elements of fraudulent concealment, Plaintiff's discovery of
the alleged fraud would end the tolling of the statute of
limitations.  As discussed, Plaintiff was aware of the allegedly
wrongful conduct when it occurred and filed a lawsuit related to
that conduct.  Fraudulent concealment does not toll the statute of
limitations for Plaintiff's claims.

>    **2.   Plaintiff's Causes of Action**

The court next considers when Plaintiff's causes of actions
accrued and the applicable statute of limitations.

"A cause of action generally accrues at the time when facts
come into existence authorizing a claimant to seek a judicial
remedy."  Doe v. Catholic Diocese of El Paso, 362 S.W.3d 707, 716
(Tex. App.—El Paso 2011, no pet.)(citing Murray v. San Jacinto
Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990)).  "In Texas, a
plaintiff's cause of action accrues, and the applicable limitations
period starts to run, 'when a wrongful act causes some legal
injury, even if the fact of injury is not discovered until later,
and even if all resulting damages have not yet occurred.'"  Id.

(quoting <u>S.V. v. R.V.</u>, 933 S.W.2d 1, 4 (Tex. 1996)).

###### i.   **Fraud and Statutory Fraud**

Plaintiff's fraud claims accrued when she discovered the alleged fraud.   <u>PSB, Inc. v. LIT Indus. Tex. Ltd. P'ship</u>, 216 S.W.3d 429, 435 (Tex. App.—Dallas 2006, no pet.)(citing <u>Murphy v. Campbell</u>, 964 S.W.2d 265, 270 (Tex. 1997)); <u>Levels v. Merlino</u>, 969 F. Supp. 2d 704, 721 (N.D. Tex. 2013).  "For fraud cases, the limitations period for both common law and statutory fraud is four years." <u>Levels</u>, 969 F. Supp. 2d at 721 (citing Tex. Civ. Prac. & Rem. Code 16.004(a)(4)).

Against Defendants BSI, Carrington, and Christiana Trust, Plaintiff alleges fraud beginning in 2010 and filed a lawsuit regarding that fraud on March 16, 2012.  Thus, at the very latest, Plaintiff's fraud claims against those Defendants began accruing on March 16, 2012.  This lawsuit was filed on December 28, 2016, outside of the limitations period.  Accordingly, Plaintiff's fraud claims against Defendants BSI, Carrington, and Christiana Trust are time barred.

Plaintiff's fraud claims against MTGLQ and Selene concern conduct that occurred in 2018 and are not time barred.

###### ii.  **Usury**

A cause of action for usury "must be brought within four years after the date on which the usurious interest was contracted for, charged, or received." Tex. Fin. Code § Sec. 305.006(a).  Thus,

Plaintiff is barred from asserting any usury claim for any conduct that occurred prior to December 28, 2012.

### iii.  Slander of Title and Cloud on Title

Plaintiff's causes of action for slander of title and to quiet title accrued when her property was foreclosed on and are not time barred.  See <u>In re Stroud Oil Properties, Inc.</u>, 110 S.W.3d 18, 26 (Tex. App.—Waco 2002, no pet.); <u>Spencer v. Hughes Watters Askanase, LLP</u>, 5:16-CV-062-DAE, 2016 WL 1626634, at *6 (W.D. Tex. Apr. 21, 2016).

### iv.  Violation of Section 12.002

Causes of action brought under Section 12.002 are subject to a four-year statute of limitations.  See <u>Vanderbilt Mortg. & Fin., Inc. v. Flores</u>, 747 F. Supp. 2d 794, 804 (S.D. Tex. 2010). Plaintiff alleges that Defendants filed fraudulent notices of a trustee's sale and a fraudulent trustee's deed in violation of Section 12.002.  The earliest of these documents was a November 29, 2016 notice of substitute trustee's sale.  Accordingly, Plaintiff's lawsuit was filed within the four-year statute of limitations for her Section 12.002 cause of action.

### v.  Negligence Per Se

Plaintiff bases her negligence per se and gross negligence per se causes of action on Defendants' alleged violations of Section 12.002.  Thus, the causes of action are not barred by limitations.

34

### vi.  Breach of Contract

"The statute of limitations for breach-of-contract actions is four years from the date of accrual." <u>Trelltex, Inc. v. Intecx, L.L.C.</u>, 494 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2016, no pet.)(citing Tex. Civ. Prac. & Rem. Code § 16.051).  "An action for breach of contract accrues immediately upon breach." <u>Id.</u> (citing <u>Barker v. Eckman</u>, 213 S.W.3d 306, 311 (Tex. 2006)).  As discussed in the court's May 6, 2019 recommendation, there is a fact issue as to which party, if any, breached the Loan first.

If Defendants breached the Loan first, that breach occurred on January 17, 2011, when BSI demanded that Plaintiff pay $2,672.49, which included a late fee of $366.35.[125]  That late fee was arguably in excess of the amount BSI was allowed to demand under the terms of the Loan following the Modification Agreement.  Thus, Plaintiff's breach of contract claim against all Defendants began to accrue on January 17, 2011.  <u>See</u> <u>id.</u>

As Plaintiff did not file this lawsuit by January 17, 2015, and tolling does not apply, her breach of contract claim appears to be time-barred.  If Plaintiff intends to bring a breach of contract claim against any Defendant, in a timely filed objection, she must identify specific breaches that occurred after December 28, 2012, that caused separate legal injuries.  Unless Plaintiff can

---

[125]     <u>See</u> Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 8 of 73 (Jan. 17, 2011 Payment Reminder).  The breach also could have occurred earlier, but for the purposes of this analysis, the court uses the alleged January 17, 2011 breach.

successfully show that her breach of contract claim is not time-barred, it should be dismissed.

### vii.   Unfair Debt Collection Practices

Plaintiff's Texas Debt Collection Act ("TDCA") claim is subject to a two-year statute of limitations.  <u>Clark v. Deutsche Bank Nat'l Tr. Co., as trustee for Morgan Stanley ABS Capital I, Inc., Tr. 2006-HE3</u>, 719 Fed. App'x 341, 343 (5th Cir. 2018).  Thus, to the extent Plaintiff seeks a remedy for a TDCA violation that occurred prior to December 28, 2014, that action is time-barred.

A one-year statute of limitations applies to Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim.  <u>Rotkiske v. Klemm</u>, 140 S. Ct. 355, 357 (2019).  Accordingly, to the extent Plaintiff seeks a remedy for an FDCPA violation that occurred prior to December 28, 2015, that action is time-barred.  Finally, the court finds that Plaintiff's TDCA and FDCPA claims relate back to when she filed this lawsuit.  <u>See</u> Fed. R. Civ. P. 15(c)(1)(B).

### viii.   Conspiracy

Plaintiff does not give any details regarding Defendants' alleged civil conspiracy or when the last act take in furtherance of the conspiracy took place.  Accordingly, the court cannot say whether Plaintiff's conspiracy claim is barred by limitations.

### ix.   Civil Theft, Conversion, and Money Had and Received

Plaintiff's civil theft cause of action is brought through the TTLA, which has a two-year statute of limitations.  <u>See Pemex</u>

Exploración y Producción v. BASF Corp., CV H-10-1997, 2015 WL
12763538, at *7n.24 (S.D. Tex. Dec. 31, 2015).  "The limitations
period for conversion is two years, and begins to run at the time
of the unlawful taking." In re Estate of Melchior, 365 S.W.3d 794,
798 (Tex. App.—San Antonio 2012, pet. denied)(citing Conoco, Inc.
v. Amarillo Nat. Bank, 14 S.W.3d 325, 327 (Tex. App.-Amarillo 2000,
no pet.)).  "A claim for money had and received has a two year
statute of limitations." John Hancock Life Ins. Co. v. Ward, CV
H-17-2423, 2018 WL 4627119, at *3 (S.D. Tex. Aug. 21, 2018)(citing
Friddle v. Fisher, 378 S.W.3d 475, 483 (Tex. App.-Texarkana 2012,
pet. denied)).

Plaintiff has not attempted to make a payment since February
11, 2013, and no Defendant has accepted a payment since September
6, 2012.[126]  Thus, these claims are time-barred to the extent they
are based on payments that were allegedly stolen.  However, to the
extent these claims relate to the Property or the proceeds of the
foreclosure sale, they would not accrue until Defendants took
possession of the Property or proceeds of the foreclosure sale,
which did not occur until after this lawsuit's filing.[127]  Thus,
these claims are not time barred.

---

[126]  See Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p.
24 of 29 (February, 26, 2013 Letter); Doc. 58-3, Ex. I to Pl.'s Resp. to Movants'
Mot. for Summ. J. p. 32 of 47 (September 6, 2012 Payment).

[127]  The court notes that it is not clear whether Plaintiff has been
deprived of possession of the Property following the foreclosure sale or if she
still resides there.

### x.   Duress

Plaintiff's claim for economic duress is subject to a two-year statute of limitations.  See <u>Castillo v. First City Bancorporation</u> <u>of Tex., Inc.</u>, 43 F.3d 953, 963 (5th Cir. 1994).  Economic duress requires a plaintiff to show that:

> (1) the defendant threatened to do some act that it had no legal right to do; (2) the threat was of such a character as to destroy the plaintiff's free agency; (3) the threat overcame the plaintiff's free will and caused it to do what it otherwise would not have done and that it was not legally bound to do; (4) the restraint was imminent; and (5) the plaintiff had no means of protection.

<u>Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.</u>, 516 S.W.3d 147, 169 (Tex. App.—Houston [14th Dist.] 2017, no pet.)(citing <u>In re</u> <u>Frank Motor Co.</u>, 361 S.W.3d 628, 632 (Tex. 2012)).  The only actions Plaintiff has taken that she may not have been legally required to do was to make payments allegedly in excess of the amount owed.  Plaintiff has not attempted to make a payment since February 11, 2013.[128]  The latest day that Plaintiff's economic duress claim could have began accruing is February 11, 2013.  Thus, as this lawsuit was not filed within two years of that date, Plaintiff's economic duress claim is time-barred.

### xi.   Fraudulent Transfers

Plaintiff does not specify which transfer was allegedly fraudulent so the court cannot determine when the cause of action

---

[128]   <u>See</u> Doc. 59-2, Ex. H to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 24 of 29 (February, 26, 2013 Letter).

began accruing.

**C.  <u>Merits of Plaintiff's Remaining Claims</u>**

Plaintiff's remaining claims that are not time barred are: (1) fraud claims against MTGLQ and Selene; (2) usury claims within the limitations period; (3) slander of title; (4) cloud on title; (5) a claim under Section 12.002; (6) negligence per se and gross negligence per se; (7) unfair debt collection practices; (8) a Section 16.035 claim; (9) conspiracy; (10) civil theft; (11) conversion; (12) money had and received; (13) fraudulent transfers; and (14) wrongful foreclosure.

**1.  Fraud**

Plaintiff alleges fraud and statutory fraud claims against Defendants MTGLQ and Selene. In order to prevail on her fraud claims Plaintiff must show that:

> (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

<u>JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.</u>, 546 S.W.3d 648, 653 (Tex. 2018)(quoting <u>Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001)). Plaintiff alleges that any demands for payment or other documents sent by Selene or MTGLQ fraudulently misrepresented the amounts Plaintiff owed. Plaintiff has not attempted to make a payment since February 2013,

well before Selene or MTGLQ were involved in this dispute.  Thus, even if the court assumed Plaintiff had met the other elements of her fraud claim, Plaintiff has presented no evidence that she relied to her detriment on any representation made by Selene or MTGLQ.

Plaintiff's statutory fraud claim arises under Texas Business and Commerce Code Section 27.01 ("Section 27.01").  "A loan transaction, even if secured by land, is not considered to come under [Section 27.01]."  <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 343 (5th Cir. 2008).  Further, Plaintiff never entered into a contract based on any representation made by MTGLQ or Selene, which is a requirement of a Section 27.01 claim.  <u>See</u> Tex. Bus. and Comm. Code §§ 27.01(a)(1)-(2).  Plaintiff's fraud claims against MTGLQ and Selene fail as a matter of law.

## 2.  Usury

Under Texas law, a usury claim has three elements: "(1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower."  <u>First Bank v. Tony's Tortilla Factory</u>, 877 S.W.2d 285, 287 (Tex. 1994).  <u>Clawson v. Ocwen Loan Servicing, LLC</u>, 3:18-CV-00080, 2019 WL 1141526, at *3 (S.D. Tex. Feb. 21, 2019).  Actually paying the usurious rate is required for the third element.  <u>See</u> <u>id.</u>  "Not later than the 61st day before the date an obligor files a suit seeking penalties for

40

a transaction in which a creditor has contracted for, charged, or received usurious interest, the obligor shall give the creditor written notice stating in reasonable detail the nature and amount of the violation." Tex. Fin. Code § Sec. 305.006(b).

Plaintiff has not alleged or presented evidence of any payment that was actually made within the limitations period because the last payment accepted by any Defendant was made on September 6, 2012.[129]  Further, Plaintiff has not cited to any evidence showing that she gave the proper notice of a usurious charge to any Defendant within 61 days of the filing of the two state court lawsuits that comprise this lawsuit.  Plaintiff has not raised a triable issue of fact on her usury claims.

### 3.   Slander of Title

"The elements of slander of title are (1) the uttering and publishing of disparaging words, (2) falsity, (3) malice, (4) special damages, (5) possession of an estate or interest in the property disparaged, and (6) the loss of a specific sale." McLaughlin v. Wells Fargo Bank, N.A., 4:12-CV-02658, 2013 WL 5231486, at *3 (S.D. Tex. Sept. 13, 2013).  Even if the court assumed the other elements, Plaintiff has not pled that any specific sale was lost.  In fact, Plaintiff has not alleged that she tried to sell her property.  Plaintiff has failed to state a

---

[129]   See Doc. 58-3, Ex. I to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 32 of 47 (September 6, 2012 Payment).

slander of title claim.

### 4. Section 12.002

To show a viable claim under Section 12.002 Plaintiff must show that Defendants:

> (1) made, presented, or used a document with knowledge that it was a "fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intended that the document be given legal effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish.

Golden v. Wells Fargo Bank, N.A., 557 Fed. App'x 323, 326-27 (5th Cir. 2014)(quoting Henning v. OneWest Bank FSB, 405 S.W.3d 950, 964 (Tex. App.-Dallas 2013, no pet.). There is a debate in Texas state and federal courts as to what documents constitute a "lien or claim" against real property within the meaning of Section 12.002. See e.g., Ray v. Ocwen Loan Servicing, LLC., A-14-CV-697 LY, 2014 WL 12878541, at *4 (W.D. Tex. Oct. 10, 2014)(discussing the uncertainty regarding what documents are within the scope of Section 12.002).

Plaintiff argues that the notices of trustee's sales and the trustee's deed are fraudulent documents within the purview of Section 12.002 because she was not in default and did not owe the amounts alleged in those documents. However, these documents only stated that a default was declared, and did not list an amount that Plaintiff owed. As the Property was undisputedly encumbered by a lien, merely taking an action on that lien does not render an action fraudulent. Thus, even if the court assumed that these

documents were within Section 12.002, Plaintiff has not identified anything that makes the documents themselves fraudulent.  Plaintiff has failed to state a Section 12.002 claim.

### 5.  Negligence Per Se

A negligence per se cause of action requires a plaintiff to "prove that: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." Ybarra v. Ameripro Funding, Inc., 01-17-00224-CV, 2018 WL 2976126, at *9 (Tex. App.—Houston [1st Dist.] June 14, 2018, pet. denied)(citing Miranda v. TriStar Convenience Stores, Inc., No. 01-11-01073-CV, 2013 WL 3968337, at *6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2013, no pet.)).   Plaintiff bases her negligence per se and gross negligence per se causes of action on the alleged violations of Section 12.002.  As discussed above, Plaintiff has failed to state a Section 12.002 claim.  Accordingly, Plaintiff has also failed to state a negligence per se or gross negligence per se claim.

### 6.  Unfair Debt Collection Practices

Plaintiff generally alleges that Defendants violated various aspects of the TDCA and FDCPA.  The only cognizable allegation that Plaintiff makes in support of a TDCA or FDCPA violation is that Defendants attempted to collect interest and fees to which they were not entitled.  Defendants argue that Plaintiff's TDCA claim is

barred by the economic loss rule and do not address Plaintiff's FDCPA claim.

In support of their argument that the economic loss rule bars Plaintiff's TDCA claim, Defendants cite multiple cases within the Fifth Circuit.  However, in a more recent decision, the Fifth Circuit found that the economic loss rule does not necessarily bar a TDCA claim, reasoning that "if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." McCaig v. Wells Fargo Bank (Tex.), N.A., 788 F.3d 463, 475 (5th Cir. 2015)(citing Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998)). Accordingly, the economic loss rule does not bar Plaintiff's TDCA claim.

Defendants are correct that Plaintiff's FDCPA and TDCA claims are vague and do not directly state which provisions of the statutes Defendants allegedly violated.  However, because Plaintiff is pro se, her allegations are entitled to a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).  The court construes Plaintiff's TDCA claim to arise under Texas Finance Code Section 392.303(a)(2) ("Section 392.303(a)(2)").  The court construes Plaintiff's FDCPA claim to arise under 15 U.S.C. § 1692e(2)(A) ("Section 1692e(2)(A)").

Section 392.303(a)(2) states that a debt collector may not use unfair or unconscionable means to attempt to collect "interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer . . . ." Section 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt . . . ." Plaintiff has provided evidence that in January 2011 she was overcharged on at least one occasion. On the record before it, the court cannot say that the overcharge was ever corrected. Additionally, the evidence before the court suggests that Plaintiff may have been overcharged multiple times following the January 2011 charge. For example, on February 16, 2011, Plaintiff was charged $1,370.80 in late fees, which arguably would be a violation of the Loan agreement following the Modification Agreement. There is sufficient evidence to support a finding that the parties servicing the Loan continued to demand amounts from Plaintiff that she did not actually owe under the terms of the Loan.

There is a fact issue as to whether, within the applicable limitations period, BSI and Selene sent Plaintiff payment demands for amounts that were not actually owed.[130] Accordingly, a trial is

---

[130]    See Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 43 of 73 (Oct. 19, 2015 Statement); Doc. 58-2, Ex. E to Pl.'s Resp. to Movants' Mot. for Summ. J. p. 55 of 73 (Dec. 19, 2016 Statement); Doc. 139-9, Ex. 21 to Pl.'s Mot. for Summ. J., Not. of Default and Intent to Accelerate pp. 35 of 49.

necessary to determine whether BSI and Selene were entitled to request the amounts they demanded.  The court is unaware of any demand made by Carrington, Christiana Trust, or MTGLQ within the limitations period.  Accordingly, Plaintiff's TDCA and FDCPA claims should be dismissed as to Carrington, Christiana Trust, and MTGLQ.

### 7.  Cloud on Title

"The elements of a suit to quiet title are: (1) the plaintiff has an interest in a specific property; (2) title to the property is affected by the defendant's claim; and (3) the defendant's claim, although facially valid, is invalid or unenforceable." Roberson v. Odom, 529 S.W.3d 498, 502 (Tex. App.—Texarkana 2017, no pet.).  MTGLQ is the only defendant claiming title to the Property, thus this claim should be dismissed against all other Defendants.  There is clear evidence supporting the first two elements.  The sole issue is whether MTGLQ's claim is invalid or unenforceable.

If, as discussed above, MTGLQ has obtained title to the Property by presenting inaccurate demands for payment, its title cannot be valid.  It would be illogical to allow MTGLQ to obtain valid title to the Property by making demands for payment beyond what the Loan terms permitted.  Accordingly, Plaintiff's suit to quiet title against MTGLQ should not be dismissed.

### 8.  Section 16.035

Section 16.035 provides the applicable statute of limitations for certain causes of action regarding when a lien can be placed on

real property.   Section 16.035 does not itself provide a cause of
action.    Thus,  Plaintiff's  Section  16.035  claim  should  be
dismissed.

### 9.  Conspiracy

Plaintiff's cause of action for civil conspiracy requires her
to show:

> (1) a combination of two or more persons; (2) the persons
> seek to accomplish an object or course of action; (3) the
> persons reach a meeting of the minds on the object or
> course of action; (4) one or more unlawful, overt acts
> are taken in pursuance of the object or course of action;
> and (5) damages occur as a proximate result.

MVS Int'l Corp. v. Int'l Advert. Sols., LLC, 545 S.W.3d 180, 196
(Tex. App.—El Paso 2017, no pet.)(citing Tri v. J.T.T., 162 S.W.3d
552, 556 (Tex. 2005)).   "An actionable civil conspiracy requires
specific intent to agree to accomplish something unlawful or to
accomplish something lawful by unlawful means."  Id. (citing First
United Pentecostal Church of Beaumont v. Parker, 514 S.W.3d 214,
222 (Tex. 2017)).  "The conspiring parties must be aware of the
intended harm or proposed wrongful conduct at the outset of the
combination or agreement."  Id. (citing Firestone Steel Prods. Co.
v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996)).

Plaintiff generally alleges that "Defendants, each of them,
had a common goal, meeting of the minds and participated in
stealing equity from Plaintiff."[131]  This conclusory allegation is

---

[131]    See Doc. 115, Pl.'s 3rd Am. Compl. p. 30.

insufficient to allege a meeting of the minds.  Additionally, there is a complete absence of any evidence that Defendants specifically agreed to steal Plaintiff's equity.  Plaintiff's civil conspiracy claim should be dismissed.

**10. Civil Theft**

Plaintiff brings her civil theft cause of action through the Texas Theft Liability Act ("TTLA").  <u>See</u> Tex. Civ. Prac. & Rem. Code § 134.001 et. seq.  The TTLA provides that "[a] person who commits theft is liable for the damages resulting from the theft." <u>See</u> Tex. Civ. Prac. & Rem. Code § 134.003(a).  "A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Penal Code § 31.03(a). Appropriate means "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another . . . or . . . to acquire or otherwise exercise control over property other than real property."  Tex. Penal Code § 31.01(4).

As discussed above, there is a fact issue regarding whether Defendants have demanded wrongful overpayments from Plaintiff.  If Defendants have demanded amounts in excess of what Plaintiff owes, then the foreclosure on the Property would be unlawful.  In other words, it is clearly unlawful for Defendants to demand that Plaintiff pay more than she owed, and then foreclose on the Property when Plaintiff refused or failed to pay that amount.  To

the extent the non-foreclosing Defendants wish to argue that they did not take possession of the Property, the definition of appropriate includes actions that bring about a transfer of title to another. Thus, those Defendants' demands and other actions that brought about the potentially unlawful foreclosure are actionable.

Additionally, if the amounts that Defendants claimed Plaintiff owed are inaccurate, then Plaintiff may be entitled to some of the surplus proceeds from the foreclosure sale. See Conversion Properties, L.L.C. v. Kessler, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied)(citing Mortgage & Trust Inc. v. Bonner & Co., 572 S.W.2d 344, 351 (Tex. Civ. App.-Corpus Christi 1978, writ ref. n.r.e.)("If there are surplus proceeds generated by the foreclosure sale after paying the trustee's fees and expenses and the existing indebtedness secured by the foreclosed lien, they are distributed to inferior lienholders, or to the holder of the equity of redemption if there are no inferior lienholders."). Thus, Plaintiff's TTLA claim regarding those proceeds also survives summary judgment.

The factual issues surrounding this dispute need to be resolved before any Defendant is dismissed from this claim.

**11. Conversion**

Texas does not recognize conversion claims for real property. See Corral-Lerma v. Border Demolition & Envtl. Inc., 467 S.W.3d 109, 124 (Tex. App.—El Paso 2015)(citing Lucio v. John G. & Marie

49

Stella Kenedy Mem'l Found., 298 S.W.3d 663, 672 (Tex. App.–Corpus Christi 2009, pet. denied)).  "[M]oney that is not specific chattel is not personal property that can be converted." Felchak v. JP Morgan Chase Bank, N.A., CIV.A. H-12-2847, 2013 WL 1966972, at *4 (S.D. Tex. May 10, 2013).  An example of money in the form of specific chattel is old coins. See Fowler v. U.S. Bank, Nat. Ass'n, 2 F. Supp. 3d 965, 982 (S.D. Tex. 2014).

To the extent Plaintiff's conversion claim is based on a conversion of the Property, that action is not recognized in Texas because the Property is real property.  To the extent Plaintiff's conversion claim is based on the conversion of the proceeds of the foreclosure sale, those proceeds are not specific chattel and Plaintiff may not maintain a conversion action for those proceeds. Plaintiff's conversion claim should be dismissed.

## 12.  Money Had and Received

"To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." MGA Ins. Co. v. Charles R. Chesnutt, P.C., 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.)(citing Edwards v. Mid-Continent Office Distrib., L.P., 252 S.W.3d 833, 837 (Tex.App.-Dallas 2008, pet. denied)).

As discussed above, if Plaintiff can show that she is entitled to some of the surplus proceeds from the foreclosure sale, she may be able to maintain a claim for money had and received.  MTGLQ is

in possession of those funds.[132]  Plaintiff's money had and received claim should be dismissed as to all Defendants except MTGLQ.

### 13.  Fraudulent Transfers

Plaintiff's claims of fraudulent transfers by Defendants fails to state a claim upon which relief can be granted.  Based on Plaintiff's inclusion of "TEX. BUS. & COM. CODE" in the title of this claim, the court construes Plaintiff's fraudulent transfer claims to be pled under the Texas Uniform Fraudulent Transfer Act ("TUFTA").  See Tex. Bus. & Comm. Code § 24.001 et seq.  "TUFTA permits a creditor, under certain circumstances, to set aside a debtor's fraudulent transfer of assets." Wohlstein v. Aliezer, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.)(citing Tex. Bus. & Comm. Code § 24.008(a)).  Here, Plaintiff is the debtor, not the creditor.  Plaintiff has failed to state a claim of fraudulent transfer and this claim should be dismissed.

### 14.  Wrongful Foreclosure

"To bring a wrongful foreclosure claim, a plaintiff must show '(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the two.'" Bridges v. Bank of New York Mellon, CV H-17-1429, 2018 WL 836061, at *10 (S.D. Tex. Feb. 12, 2018)(quoting Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256 (5th Cir. 2013)).

---

[132]    See Doc. 145-9, Ex. 1-H to MTGLQ and Selene's Resp. to Pl.'s Mot. for Summ. J., Trustee's Deed.

Plaintiff has provided no evidence that the $463,180.05 sale price of the Property was grossly inadequate.  Rather, Plaintiff made an argument regarding the amount she owed versus the sale price and claimed that she is entitled to that difference.  Plaintiff's wrongful foreclosure claim should be dismissed.

**D.**   **<u>Stanwich</u>**

Plaintiff has named Stanwich Mortgage Acquisition Co., Inc. ("Stanwich"), as a Defendant in this matter.  Stanwich did not move for summary judgment, although that may have been an inadvertent mistake as Stanwich is represented by the same counsel as BSI, Christiana Trust, and Carrington.  The summary judgment evidence does not show how Stanwich itself was involved in this dispute. The court assumes Plaintiff associated Stanwich with this lawsuit because its name is similar to Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust Series 2012-10. As the court is unaware of any evidence tying Stanwich to this lawsuit, Stanwich should be dismissed.

**E.**   **<u>Plaintiff's Motion for Preliminary Injunction</u>**

Plaintiff previously moved for a preliminary injunction to prevent MTGLQ and Selene from conducting the foreclosure sale.  The court held a hearing regarding that motion and Plaintiff's request for a preliminary injunction was denied because Plaintiff failed to show a substantial likelihood of success on the merits of her

claims.   Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011)(discussing the elements a plaintiff must establish to obtain a preliminary injunction)(quoting Byrum v. Landreth, 566 F.3d 442, 445 (5th Cir. 2009)).   Plaintiff filed the pending request for a preliminary injunction seeking to halt MTGLQ and Selene from taking possession of the Property.   Plaintiff is essentially seeking the same relief she sought in her first request - to halt the foreclosure process.   Plaintiff has already had her day in court and failed to persuade the court that she was entitled to a preliminary injunction.   Accordingly, Plaintiff's pending request for a preliminary injunction should be **DENIED**.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion for preliminary injunction be **DENIED** and Plaintiff's claims be **DISMISSED** except for the following: (1) TTLA claims against all Defendants except Stanwich; (2) FDCPA and TDCA claims against BSI and Selene within the described limitations period; (3) suit to quiet title against MTGLQ; (4) claim for money had and received against MTGLQ; and (5) breach of contract claim if, in a timely filed objection, Plaintiff can show a specific breach of contract action that isn't time-barred.   The court also **RECOMMNEDS** that Defendant Stanwich Mortgage Acquisition Co., Inc., be **DISMISSED** from this lawsuit.   Defendants' objections are **OVERRULED** and their motions to strike are **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of June, 2019.

Nancy K. Johnson
United States Magistrate Judge