# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA CAO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H- 17-321 |
| | § | |
| BSI FINANCIAL SERVICES *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Memorandum and Recommendation ("M&R") filed by Magistrate Judge Nancy Johnson. Dkt. 160. The Magistrate Judge addressed the following motions: (1) an amended motion for judgment on the pleadings filed by defendants BSI Financial Services, Inc. ("BSI"), Christiana Trust ("Christiana"), and Carrington Mortgage Services, LLS ("Carrington") (collectively, "BC&C") (Dkt. 133); (2) a motion for summary judgment filed by BC&C (Dkt. 136); (3) objections to and motion to strike plaintiff Angela Cao's summary judgment evidence by BC&C (Dkt. 147); (4) a motion to strike Cao's declaration by BC&C (Dkt. 156); (5) a motion for summary judgment and judgment on the pleadings filed by defendants MTGLQ Investors, L.P. ("MTGLQ") and Selene Financing LP ("Selene") (collectively, "MTGLQ&S") (Dkt. 135); (6) objections to and a motion to strike Cao's summary judgment evidence by MTGLQ&S (Dkt. 146); (7) objections to and motion to strike Cao's declaration by MTGLQ&S (Dkt. 155); (8) a motion for summary judgment and application for temporary injunction filed by Cao (Dkt. 139); and (9) a motion for preliminary injunction filed by Cao (Dkt. 158). The Magistrate Judge found that the following motions were moot: (1) BC&C's motion for judgment on the pleadings (Dkt. 132); and (2) Cao's motion for summary judgment and temporary injunction

(Dkt. 140). *See* Dkt. 160 at 2 n.2. The Magistrate Judge recommends that the court grant in part and deny in part the remaining preceding motions so that all claims against the defendants are dismissed except (1) the Texas Theft Liability Act ("TTLA") claims, with the exception of the TTLA claims against Stanwich Mortgage Acquisition Co., Inc. ("Stanwich"), which should be dismissed; (2) the Fair Debt Collection Practices Act ("FDCPA") and Texas Debt Collection Act ("TDCA") claims against BSI and Selene that are not barred by the statute of limitations; (3) the suit to quiet title against MTGLQ; (4) the claim for money had and received against MTGLQ; and (5) the breach of contract claim if Cao can show it is not time-barred. *Id.* The Magistrate Judge also recommends that all claims against Stanwich be dismissed. *Id.* She overruled all of the defendant's objections and denied the motions to strike. *Id.* She recommends that the court deny Cao's request for injunctive relief (Dkt. 139). *Id.*

After considering the M&R, all of the motions and related briefing, record evidence, all of the objections to the M&R and responses to the objections, and the applicable law, the court is of the opinion that the M&R should be ADOPTED IN PART, the defendants' objections should be SUSTAINED IN PART AND OVERRULED IN PART, Cao's objections should be OVERRULED, Cao's motion for summary judgment and injunctive relief should be DENIED, and judgment should be entered in favor of BC&C and MTGLQ&S on all of Cao's claims.

## I. BACKGROUND

The Magistrate Judge provided an exhaustive recitation of facts in the "Factual Background" and "Procedural Background" portions of her M&R (*see* Dkt. 160 Part I at 2–21), and the parties did not specifically object to any of the background information set forth in the M&R. Accordingly, the court **ADOPTS** and **INCORPORATES** the majority of the factual background and all of the procedural background in the M&R.

However, some of the Magistrate Judge's findings with regard to Cao's causes of action relate to a specific factual finding that does not bear support on the current record.[1]  The Magistrate Judge determined that there was a question of fact as to whether Cao was overcharged a late fee in January 2011 and questions a "late fee" of $1,370.80 on February 16, 2011.  Dkt. 160.  The Magistrate Judge noted the following: (1) under the terms of the loan, the late fee could only equate to five percent of the overdue payment or principal and interest and could only be charged once per payment; (2) on January 17, 2011, BSI demanded that Cao pay $2,672.49, which included a "late fee" of $366.35 (citing Dkt. 58-2 at 8 (Jan. 17, 2011 payment reminder)); (3) two days later, on January 19, 2011, Cao received a statement indicating she owed $4,690.66, which included late charges of $78.38 (citing Dkt. 58-2 at 9 (Jan. 19, 2011 statement)); (4) the January 19, 2011 statement indicated that Cao had only paid $17,179.85 since December 19, 2010, even though Cao made a payment of $17,479.19 on December 29, 2010; and (5) a *different* January 19, 2011 statement demanded a payment of $3,085.74 by February 16, 2011 (citing Dkt. 58-2 at 10 (the second January 19, 2011 statement)).  *Id.*  The Magistrate Judge found that the defendants subsequently continued to demand payment for these fees and there was no indication in the record that any errors had been corrected.  *Id.*

The court has thoroughly reviewed these documents and makes the following observations.

- The January 19, 2011 statement from BSI requests payment by February 2, 2011.  Dkt. 58-2 at 9.  It states that Cao's total amount paid was $17,179,85, which included late charge fees of $1,036.87, and that a partial payment of $1,604.92 was received.  *Id.*  It seeks the January and February payments, plus a late charge of $78.38 because the January payment was late.  *Id.*  The "total amount due" under "delinquent amounts" is $4,690.66 ((($385.32

---

[1] As noted in Part II.A, *infra*, the court reviews portions of the record to which no party objected for clear error.

principal + $1,182.23 interest + $738.59 reserve) * 2 (for January and February)) + $78.38 (late fee for January) = $4,690.66). Five percent of the principal and interest for one month, the interest allowed under the loan documents, is $78.38 (($385.32 principal + $1,182.23 interest = $1,567.55) * .05 = $78.38). The amount paid, however, $17,179.85, does look suspicious given the payment of $17,479.19 on December 29, 2010.

- The *second* January 19, 2011 statement is actually just the same statement but also includes Cao's payment coupon (the statement above said "retain this portion for your records"). *Compare* Dkt. 58-2 at 9, *with* Dkt. 58-2 at 10. The payment coupon portion includes additional information. *See* Dkt. 58-2 at 10. It shows that Cao owes the January payment of $2,306.14 ($385.32 principal + $1,182.23 interest + $738.59 reserve), the February payment of $2,306.14, the late fee of $78.38, which total the $4,690.66 in the first "statement," but then deducts the $1,604.92 "partial payment" for a total amount due of $3,085.74. While this explains the difference in the amounts that appeared to be demanded on January 19, 2011, it still does not provide an explanation for the discrepancy between Cao paying $17,479.19 but the statement only reflecting payments of $17,179.85.

- The other cited bill, the January 17, 2011 statement (Dkt. 58-2 at 8), indicates that the total amount due is $2,672.49 and that the "total unpaid late fees" are $366.35. This understandably seemed suspicious to the Magistrate Judge because $366.35 is clearly more than the five percent allowed for late fees. The amount due without the late fees ($2672.49 - $366.35 = $2,306.14) equals the regular payment of $2,306.14 ($385.32 principal + $1,182.23 interest + $738.59 reserve). If one takes into account that the correct late fee for missing January's due date was $78.38, this leaves $287.97 in unexplained late fees. This is the discrepancy that concerned the Magistrate Judge, along with the seeming discrepancy

4

between the actual payment of $17,479.19 that appeared as $17,179.85 on the January 19 statements.

Given the evidence above, on May 6, 2019, the Magistrate Judge recommended denying summary judgment on the breach of contract claim, noting that the summary judgment evidence did not establish which parties, if any, breached first and whether any alleged breaches were cured. Dkt. 92.  She relied on the finding that it appeared that BSI charged a late fee of more than five percent on January 17, 2011.  Dkt. 92.  She also noted the irregularity of the $17,479.19 payment and the notation that Cao had only paid $17,179.85.  *See id.*  This court adopted the M&R on May 23, 2019.  Dkt. 106.

On June 21, 2019, Cao attached additional evidence to her third amended complaint. Dkt. 115, Ex. 3.  It is a letter that demonstrates that the "late charge" of $366.35 equates to an allowable late charge of $78.38 (five percent of the principal and interest) for the late January 2011 payment, plus $287.97, which is a fee that was carried over from the previous loan servicer.  *Id.* A review of the evidence the plaintiff submitted earlier shows amounts that were "transferred" on May 17, 2010, to a new servicer (BSI), and it includes a "fee transfer," a "late charge transfer," an "escrow transfer," and a "balance transfer."  Dkt. 58-4 at 2 (the "transfers" from 5/17/10 are on the last four rows).  The "fee transfer" was $287.97.  *Id.*  Thus, the $287.97 fee is not a "late fee" in excess of the five percent allowed.

That still leaves the question of the discrepancy between $17,479.19 and $17,179.85.  But the letter attached to the third amended complaint explains that too.  *See* Dkt. 115, Ex. 3.  Cao paid $17,479.19 on January 5, 2011, which was meant to bring the account current through the December 2010 payment.  *Id.*  The amount was applied to seven past-due payments of $2,306.14 (7 * $2,306.14 = $16,142.98) and overdue late charges of $1,036.87 ($16,142.98 + $1,036.87 =

$17,179.85), which left $299.34.  The extra $299.34 was applied to the "partial payment" field.  *Id.*  Note, without the extra $299.34 that was applied to "partial payment," the total credited was $17,179.85, the previously questionable amount the January 19, 2011 statement said was paid.

That still leaves a pretty large "late fee" of $1,036.87, which is more than five percent of the seven overdue payments.  However, the $1036.87 is for six late fees for late payments made from July through December 2010 at $78.38 each plus $566.59 in actual late fees that transferred over from the previous servicer.  *Id.*  If one looks back at the earlier exhibit that listed "transfers" occurring on 5/17/10 when the servicing switched to BSI, the amount of the "late charge transfer" is, indeed, $566.59.  Dkt. 58-4 at 2.  This transferred amount is from late charges that Cao did not pay to the previous servicer.  Cao did not pay late fees, post-modification,[2] for May, July, November, and December of 2009, and January through April of 2010.  *See id.*  It does appear that a few payments or varying amounts were attributed to late fee charges from the time of the modification until the servicing transfer.[3]  *See id.*  However, it is clear from the record that Cao was late on at least eight payments post-modification and prior to BSI taking over as the servicer and was charged late fees but rarely made payments that were applied to the overdue late fees.  Unfortunately, neither party has sufficiently explained or provided documents from which the court can easily ascertain if the $566.59 late charge transfer amount is correct, other than affidavits filed by the defendants that conclusorily state everything is correct.  Regardless, since Cao paid these fees in January 2011 with her payment of $17,479.19, even if there were some anomalies

---

[2] All of her late fees prior to the modification were rolled into the modification.  *See* Dkt. 145-4 ¶ 1(a) (Modification Agreement) ("Borrower agrees that the unpaid principal balance due on the Note of $233,613.71 shall be adjusted to $261,182.32 ("New Balance"), to reflect the amount of unpaid interest, late charges, fees and costs, advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven or deferred, as reflected on Attachment 'A'.").

[3] The BSI Transaction History indicates that the following payments were applied to the "late fee" category between the modification and transfer to BSI: $229.31 and $63.17.  Dkt. 58-2; *see also* Dkt. 88-4 at 47 (a more readable copy).

with the previous servicer, these amounts have not been carried over and thus are not reflected in the amounts being billed during the time period in question in this case.

The court now turns to the "late fee" of $1,370.80 on February 16, 2011.  See Dkt. 58-2 at 11.  This amount is also explained by the letter attached to the third amended complaint.  *See* Dkt. 115 at 47.  If you subtract the $366.35 from the previous month and $78.38 for the allowable (five percent of principal and interest) February late fee, that leaves $926.07 ($1370.80 - $366.35 - $78.38 = $926.07).  The letter attached to the third amended complaint indicates that Cao was charged $926.07 for attorneys' fees associated with the foreclosure.  *See* Dkt. 115 at 47; *see also* Dkt. 88-4 at 48 (indicating $926.07 in attorneys' fees were charged on 1/27/11).  This February statement is thus not evidence that BSI was charging Cao more than five percent in late fees.

With these clarifications, the court **ADOPTS** the factual and procedural background in the M&R.  The court now considers the objections as to each cause of action in light of these modifications.

## II. LEGAL STANDARDS

### A.    Review of an M&R

For dispositive matters, the court "determine(s) de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983).  Here, the court will review all issues to which objections were filed de novo and will consider whether there is any

clear error on the face of the record with regard to portions of the M&R to which no party properly objected.

For nondispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

**B.     Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standards govern Rule 12(c) and Rule 12(b)(6) motions. *See Chauvin v. State Farm Fire & Casualty Co.*, 495 F.3d 232, 237 (5th Cir. 2007).

To survive a motion to dismiss or a motion for judgment on the pleadings, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677.

C.       **Motion for Summary Judgment**

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III.  MOOTED MOTIONS

The Magistrate Judge found that BC&C's motion for judgment on the pleadings contained at docket entry 132 and Cao's motion for summary judgment and temporary injunction contained at docket entry 140 were both moot.  Dkt. 160 at 2.  The parties do not object to these findings and the court finds no clear error.  Accordingly, the court **ADOPTS** these findings.  BC&C's motion for judgment on the pleadings at docket entry 132 and Cao's motion for summary judgment and temporary injunction at docket entry 140 are both **DENIED AS MOOT**.[4]

### IV.  SUMMARY OF OBJECTIONS

There are numerous issues in this case, and the court finds that the best way to approach the objections is to organize what findings the parties have "properly objected to," as the court

---

[4] The docket entry for Cao's mooted motion for summary judgment is 140, and the docket entry for Cao's motion for summary judgment that the court addresses is 139.  However, docket entry 140 is dated December 20, 2019, and docket entry 139 is dated December 23, 2019.  *See* Dkts. 139, 140.

must conduct a de novo review of those issues.  MTGLQ&S object to the Magistrate Judge's recommendations to the extent the Magistrate Judge did not grant judgment in their favor. Dkt. 165.  They specifically contend that Cao did not present evidence to support her quiet title, money had and received, TTLA, TDCA, and FDCPA claims.  They point out that Cao presented no evidence that there were excess proceeds from the foreclosure sale needed to support the remaining portions of her money had and received or TTLA claims.  They also argue that the money had and received claim should be dismissed as a matter of law because their relationship with Cao is governed by a contract and that Cao fails to state a claim for the TDCA and FDCPA claims.  *Id.*

BC&C object to the Magistrate Judge's finding that there is a question of fact as to whether BC&C wrongfully demanded overpayments from Cao, which resulted in the recommendation that the TTLA, TDCA, and FDCPA claims against BC&C survived their dispositive motions. Dkt. 167.  They urge the court to grant their motion for judgment on the pleadings or their motion for summary judgment on all claims asserted against them.  *Id.*

Cao's objections are more obtuse.  While the Magistrate Judge recommended that Cao's motion for summary judgment be denied and that most of the claims she asserts against the defendants be dismissed, she allowed Cao the opportunity to show a specific breach of contract action that was not time barred in her response (or objections) to the M&R. Dkt. 160.  Cao filed a 45-page document objecting to the M&R.[5]  Dkt. 166-1.  She objects to the Magistrate Judge's findings on the statute of limitations, arguing that the statute of limitations should be tolled due to fraudulent concealment, estoppel, or other reasons.  *Id.*  She contends that she provided "CPA

---

[5] This is well beyond the page limits contained in the court's procedures.  *See* Judge Gray H. Miller, Court Procedures § 7(A), *https://www.txs.uscourts.gov/sites/txs/files/judgemillersprocedures1118_0.pdf* ("Without leave of court, any memorandum shall be limited to 25 pages.").

reports and calculations" that show the defendants charged for and received payments beyond what the loan term permits.[6]  *Id.* (citing Dkt. 58-4, Ex. K at 2–6, Dkt. 115, Ex. 1 at 37–40).  She argues that the defendants have not provided a scintilla of evidence that she defaulted in 2012 or that the amounts they have demanded in payment are legal.  *Id.*  She asserts that the defendants' own evidence shows that she made a payment in June 2012 and subsequent installments that they did not apply.  *Id.* (citing Dkt. 139-9 at 34, which is an exhibit provided to the court by Cao).  Cao then provides a laundry list of reasons why each of her claims should not be dismissed.  *See id.* She does not pinpoint any specific finding in the M&R that she contends is erroneous; rather, she generally argues that all of her claims are valid and that the defendants have not carried the burden of proof.  *See generally id.*  While parties objecting to an M&R must "file specific written objections to the proposed findings and recommendations," and the Magistrate Judge referred to the rule in which this requirement is stated in her M&R, the court will give Cao some leeway because she is pro se.  Fed. R. Civ. P. 72(b); Dkt. 160 (advising the parties had fourteen days to "file written objections . . . pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13").

Before proceeding to the substance of the individual objections, the court addresses Cao's numerous assertions that the defendants did not "carry their burden" or "present a scintilla of

---

[6] The exhibit cited at docket 58, Ex. K, is a printout of a transaction history from BSI, and it would likely be easily admissible in trial as a business record.  Dkt. 58-4, Ex. K.  It is, however, not a CPA report and calculation, except to the extent banks may employ CPAs.  The cited exhibit that is attached to docket entry 115 (Cao's third amended complaint) is *possibly* a CPA analysis.  However, there is no affidavit attached explaining where the numbers came from, no expert report, and no indication as to who created the document.  It therefore is not summary judgment evidence that the court can rely on.  *See* Dkt. 115 at 37–40; *see also* Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.");  Dkt. 160 (ruling that the "court does not consider any documents that are irrelevant, obtained from the internet or unknown sources, or created by Plaintiff").  While there is an "expert report" filed by Cao on the record, it is by a Registered Professional Landman, and it relates to potential competing claims to the title, tax claims, mineral rights, easements, and lien claims, and does not appear to discuss the amounts Cao actually paid or failed to pay in accordance with the terms of her mortgage and the modification agreement.  *See* Dkt. 17 (relying on real property records, tax records, probate records, and district court records).

evidence."  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).  Here, Cao is the plaintiff and bears the burden at trial to prove the elements of her claims.  *See, e.g.*, *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2 998, 1003–04 (5th Cir. 1982) (pointing out that in "contract-breach cases, as in civil cases generally, the burden of proof of the elements of recovery is on the plaintiff, but the defendant must prove affirmative defenses such as lack of capacity, fraud, mistake, exoneration, or exception or exclusion from the contract").  The defendants, however, do bear the burden of proof on their statute of limitations defenses.  *See In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000) ("Under Texas law, a party defending on ground of statute of limitations bears the burden of proof on this issue.").

## V.   LEGAL ANALYSIS

The court will now address Cao's objections to the Magistrate Judge's findings on the statute of limitations and will then address each cause of action the parties discuss in their objections.

### A.   Statute of Limitations—in General

MTGLQ&S contended in their motion for summary judgment that Cao did not file suit against them until February 27, 2019, so any fraud, usury, or breach of contract claims asserted against them that accrued prior to February 27, 2015, are precluded.  Dkt. 135.  BC&C contended

in their motion for summary judgment that Cao filed her lawsuit against them on December 28, 2016, and that any breach of contract claim arising prior to December 28, 2012, is time-barred. Dkt. 136.  They pointed out that Cao's breach of contract claim against BSI appears to be based on contractual violations dating back to 2010, which is more than six years before Cao filed the lawsuit, and her claims against Carrington and Christiana appear to be based on violations from 2012, which are more than four years prior to the filing.  *Id.* (citing paragraphs 47 and 48 of the third amended complaint).  BC&C also argued that Cao's fraud claims are barred by the statute of limitations.  Dkt. 148.  The defendants argued in their motions for judgment on the pleadings that all of Cao's claims are barred by the statute of limitations.  Dkts. 133, 135.

The M&R indicates that the defendants argued that all of Cao's claims were barred by the statute of limitations and Cao argued that the statutes of limitations are tolled.  Dkt. 160.  The Magistrate Judge held that the continuing tort theory does not apply to Cao's claims because Cao's correspondence from 2010 to BSI reflects that she knew of the allegedly wrongful conduct. Dkt. 160.  Additionally, the Magistrate Judge pointed out that Cao's injury was a continuing injury from one alleged wrongful act, not a repeated injury, because all of Cao's claims in this lawsuit stem from the alleged breach of contract in January 2011.  *Id.*  With regard to revival, the Magistrate Judge found that, under Texas law, the statute of limitations was not revived each time one of the defendants made an allegedly inaccurate demand.  *Id.*  The Magistrate Judge also found that Texas Civil Practices and Remedies Code Sections 16.068 and 16.069, which discuss how causes of action can relate back to an original pleading for limitations purposes, do not apply to this situation.  *Id.*  The Magistrate Judge likewise found that estoppel does not toll the statute of limitations because the plaintiff does not show how any misrepresentations by the defendants delayed filing this lawsuit and, to the extent Cao believed her first lawsuit was incorrectly

13

dismissed due to misrepresentations, the remedy was to appeal that lawsuit, not to toll the limitations period for a second lawsuit. *Id.* With regard to the argument that the statute should be tolled due to fraudulent concealment or the discovery rule, the Magistrate Judge noted that nothing was inherently undiscoverable with regard to the claims in this case about conduct in 2012 or that the plaintiff was unaware of the conduct that is the basis of the claims in this lawsuit. *Id.*

In her objections to the M&R, Cao argues that the statute of limitations should be set aside because BSI and Christiana knowingly induced a wrongful dismissal of Cao's previous lawsuit by presenting an unenforceable settlement agreement to the court. Dkt. 166-1. The settlement agreement to which she refers indicated that Oaktree was the lender, but Oaktree "was a stranger to the loan contract" and had no authority to carry out the agreement. *Id.* Cao contends that she could not timely appeal because the identity of the lender was not known until after the deadline. *Id.* She asserts that the notice of substitute trustee's sale on November 29, 2016, was the first time she had an indication that Oaktree may not be the lender, and she timely filed this lawsuit the next month. *Id.*

BC&C argue that Cao raises the argument that she was unable to determine Oaktree was not the creditor until 2016 for the first time in her objections, and thus has waived this argument. Dkt. 168. MTGLQ&S argue that Cao cannot bring new arguments—her tolling arguments—for the first time in her objections to the M&R. Dkt. 170.

Cao brought several tolling arguments in her original motion, including continuing tort, revival, Texas Civil Practices and Remedies Code sections 16.068 and 16.069, estoppel, the discovery rule, and fraudulent concealment in her motion for summary judgment. Dkt. 139; *see* Dkt. 160 at 26 ("Plaintiff argues that the applicable statutes of limitation are tolled under various doctrines."). The one tolling argument not raised is that Cao did not know about Oaktree

erroneously being identified as a lender when she agreed to settle a previous lawsuit within the limitations period. However, the factual allegations about Oaktree being a "stranger" and BSI representing that Oaktree was the lender is in Cao's motion for summary judgment, and the Magistrate Judge discusses the timing of this in the factual background portion of the M&R. *See* Dkts. 139, 160. Thus, the defendants cannot argue that this is entirely new information.

Regardless, this seemingly new argument does not toll the statute of limitations for the claims Cao asserts or attempts to assert in her third amended complaint. She does not even mention Oaktree or discuss the allegedly void settlement agreement in her third amended complaint. *See* Dkt. 115 (third amended complaint, which was filed on June 21, 2019). Her claims in this lawsuit relate to allegedly excessive late fees, amounts charged for insurance that Cao claims should not have been charged, and interest rates allegedly charged that were in excess of the rates permitted under the contracts at issue. *See id.* There is no evidence that any information about these activities was fraudulently concealed or undiscoverable until after the limitations period had expired. Cao's objections to the Magistrate Judge's ruling that the statutes of limitations were not tolled is **OVERRULED**.

**B.     Breach of Contract**

The Magistrate Judge noted that the statute of limitations for a breach of contract claim is four years from the date of accrual and that it accrues immediately upon the breach. Dkt. 160. She pointed out that the court had already determined that there is a question of fact as to which party breached first. *Id.* (citing Dkt. 92 (May 6, 2019 M&R)). She noted that if the defendants breached first, the breach occurred on January 17, 2011, because BSI demanded that Cao pay a late fee of $366.35, a fee arguably in excess of the amount allowed under the contract. *Id.* Because the alleged breach occurred more than four years before Cao filed this lawsuit, the Magistrate Judge

held that even if the defendants breached first, the claim is time barred.[7]  *Id.*  However, she advised Cao that she could avoid dismissal if she could "identify any specific breaches that occurred after December 28, 2012, that caused separate legal injuries."  *Id.*

In her objections, Cao argues that the court "established" that the defendants breached the contract in January 2011 and the plaintiff did not breach, if at all, until June 2012, so the defendants breached first.  Dkt. 166-1 at 12. *But see* Dkt. 92 (finding a question of material fact regarding whether the defendants breached in January 2011).  Cao also contends that the defendants violated the covenant of good faith and fair dealing imposed by common law and that their breach therefore also sounds in tort.  Dkt. 166-1. *But see* Dkt. 115 (not asserting a breach of the covenant of good faith and fair dealing claim).  She then responds to the Magistrate Judge's invitation to provide specific instances of breaches that are not barred by the statute of limitations with the following list of times the defendants allegedly breached the contract: (1) when the defendants forced unauthorized insurance policies on behalf of the plaintiff; (2) when they concealed and misrepresented the charges that were required to be disclosed; (3) when MTGLQ charged and received interest in amounts that exceeded the contractual amount; (4) when BSI, Christiana, MTGLQ, and Selene failed to respond to Cao's notices of grievance and notices to cure; (5) when MTGLQ and Selene charged for interest after the acceleration when no interest was contractually allowed and charged for late fees when monthly installments were no longer accepted; (6) when BSI, Christiana, MTGLQ, and Selene exercised the power of sale when they knew or should have known it was not authorized; (7) when MTGLQ and Selene unlawfully foreclosed on Plaintiff's homestead; (8) when MTGLQ received and kept proceeds that they knew or should have known belonged to Cao; (9) when BSI, Christiana, Selene and MTGLQ unconscionably and unfairly

---

[7] As noted above, evidence attached to Cao's third amended complaint indicates that the $366.35 was not a late fee in excess of the amount allowed under the contract.

harassed and threatened both Cao and her family; and (10) when each defendant made negative reports on Cao's credit when they knew or should have known that she did not default.  *Id.*

While these appear to be substantial allegations of separate breaches, Cao fails to indicate what evidence supports her claims or, in some cases, what part of the contract the alleged conduct breaches.  *See id.*  BC&C argue that Cao cannot point to any evidence demonstrating that she has incurred quantifiable damages as a result of any of the defendants' alleged wrongdoing.  Dkt. 168.  MTGLQ&S similarly argue that Cao fails to allege with specificity to which findings she objects, her objections are conclusory and unsupported by evidence, she fails to advance any objections supported by colorable legal arguments, and she fails to submit evidence proving any of the supposed wrongful charges or any quantifiable damages.  Dkt. 170.  MTGLQ&S assert that Cao has not come forward with any evidence that challenges the amounts stated in the multiple foreclosure notices, and she had not shown that she tendered the payment needed to avoid foreclosure.  *Id.*

The court agrees with the defendants that Cao does not point to any evidence supporting her claims of specific post-2011 breaches.  The Magistrate Judge invited Cao to "identify specific breaches that occurred after December 28, 2012, that caused separate legal injuries."  Dkt. 160.  While Cao identifies many alleged breaches, she does not state what her injuries are for any of the alleged separate breaches or even provide dates.[8]  At the summary judgment stage, it is insufficient to allege that there might be some irregularities somewhere in the voluminous record.  A breach of contract claim requires proof of (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result

---

[8] Cao also argues that the defendants should be time-barred from collecting the money she owes under the contract. However, it is unclear how this is helpful since the defendants rescinded the acceleration and then reaccelerated and foreclosed on Cao's home.  The argument thus appears, at best, to be moot.

of the breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). The plaintiff must show the court specific evidence that demonstrates an issue of material fact as to each element of her claim. Cao's conclusory allegations and references to documents without explanation does not carry her summary judgment burden of demonstrating there is an issue of material fact as to each element of her claim for any of her newly proposed breaches.

Cao's arguments or objections that the defendants breached first and that her breach of contract claim also sounds in tort are irrelevant. Any claim related to the alleged 2011 breach by the defendants is barred by the statute of limitations, and Cao does not assert a claim for breach of the covenant of good faith and fair dealing. *See* Dkts. 115, 160.

Cao's objections to the Magistrate Judge's dismissal of her breach of contract claim are **OVERRULED**. The defendants' motions for summary judgment on Cao's breach of contract claims are **GRANTED**, and Cao's breach of contract claims are **DISMISSED WITH PREJUDICE**.

## C.     Duress

The Magistrate Judge recommended dismissal of Cao's duress claim because it is subject to a two-year statute of limitations. Dkt. 160. The Magistrate Judge pointed out that to prove duress, the plaintiff must have taken an action she otherwise would not have taken and was not legally bound to do. *Id.* The Magistrate Judge found that the only action Cao alleged that she took that she potentially was not required to do was make payments in excess of what she owed, and she has not made a payment or even attempted to do so since February 11, 2013. *Id.* The lawsuit was filed more than two years after that date, so the statute of limitations had expired when she filed suit. *See id.*

In her objections, Cao contends that she has established an issue of material fact for her duress claim and that the defendants cannot produce any evidence otherwise.   Dkt. 166-1. However, Cao does not state what evidence she has provided to establish an issue of material fact for her duress claim.   *See id.*   She alleges in her complaint that the defendants' demands of unauthorized and egregious amounts and refusal to apply and return equity and threats to seize her property were "economic duress."   Dkt. 115.   To make out a claim for duress, as the M&R notes, the plaintiff must have actually done something she would not have otherwise done.   *See* Dkt. 160. Cao has not pointed to any evidence indicating that she was forced to take actions she otherwise would not have taken within the limitations period.   There is, however, ample evidence in the record that Cao was delinquent on her house payments before the limitations period, and Cao has not presented any evidence indicating that she made any payments of "unauthorized and egregious amounts" within the two years prior to filing suit.   Accordingly, Cao's objections to the Magistrate Judge's finding that Cao's duress claim is barred by the statute of limitations are **OVERRULED**. The defendants' motions for summary judgment on Cao's duress claims are **GRANTED**, and her duress claims are DISMISSED **WITH PREJUDICE**.

**D.      Fraud**

The Magistrate Judge found that Cao's fraud and statutory fraud claims against BC&C also were barred by the statute of limitations.   *See* Dkt. 160.   She held, however, that the fraud claims against MTGLQ&S occurred in 2018 and were not time barred.   *See id.*   However, she found that the evidence demonstrates that the plaintiff has not even attempted to make a payment since February 2013, which is well before MTGLQ&S were involved in the dispute, so there is no evidence that she relied on any of MTGLQ&S's representations to her detriment, which is an

essential element of a fraud claim. *See id.* Thus, the Magistrate Judge recommended that the fraud claims be dismissed as to all defendants. *Id.*

Cao first objects to the Magistrate Judge's recommendation that the court dismiss her fraud claims because "Defendants failed to provide any evidence disputing Plaintiff's fraud claims and have ironically provided evidence supporting the repeated misrepresentations of the character of the charges they knew were unlawful." Dkt. 166-1 (citing Dkt. 52-1, Ex K at 101—07, Ex. M at 110; Dkt. 135-7, Ex. 1-F). However, Cao bears the burden of showing there is a triable issue of fact for each element of any claims that are not barred by the statute of limitations. *See* Part IV, *supra*. If Cao cannot show she has some evidence supporting the elements of fraud, the defendants do not have to provide evidence disputing the claims.

Next, rather than taking issue with the Magistrate Judge's specific findings, Cao attempts to introduce different arguments as to why the defendants, in general, committed fraud. She contends first that the defendants knew she did not default in June 2012 and their misrepresentations that she did are fraudulent. *Id.* She asserts that this fraud is continuing because MTGLQ&S continue to assert that the plaintiff has not paid the installment payment due for June 1, 2012, when she in fact did make the payment.[9] *Id.* She also contends that BSI and Christiana fraudulently represented that the lender was Oaktree on a settlement agreement, which voided the agreement even though the court enforced it. She contends this was a fraudulent settlement. *Id.*

In Cao's third amended complaint, the fraud claim is merely a recital of the elements of fraud and a statement that "the defendants made false representations for the purpose of inducing Plaintiff to enter into contracts including but not limited to the modification agreement." Dkt. 115.

---

[9] As evidence that she did make the installment and subsequent installments, she cites Dkt. 139-9, Ex. 20 at 31–34. This exhibit shows that Cao made a payment on July 5, 2012, that was applied to the amount that was due on May 1, 2012, and had not been timely paid. Simply making a payment after June 2012 does not necessarily equate to paying the June 2012 bill.

In the body of the third amended complaint, Cao discusses how another lender or servicer, HomeEq Servicing, allegedly made material misrepresentations in May 2009 that Cao owed outstanding taxes to induce her into entering into a modification agreement; May 2009 is clearly outside the limitations period. *Id.* Cao does not mention any material misrepresentations relating to a settlement agreement in her third amended complaint. *See id.* While the court understands that Cao is pro se and the court therefore is more lenient, Cao is not completely excused from the federal pleading standards. *See, e.g.*, *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."). Fraud must be pled with particularly. *See* Federal Rule of Civil Procedure 9(b). Cao's theories of fraud that could potentially be within the limitations period are not discussed with particularity in the third amended complaint and thus do not begin to meet the Rule 9(b) standard no matter how leniently the court applies the rules. And, Cao has been given three opportunities to amend her complaint. Thus, the fraud and statutory fraud claims should be dismissed for failure to state a claim as required by Rule 9(b).

Moreover, Cao does not provide evidence indicating that there is a question of material fact as to the alleged misrepresentation regarding the June 2012 payment, as she has not provided evidence that would be admissible at trial that she indeed made a payment that should have covered the amount due in June 2012. Moreover, as the Magistrate Judge noted, Cao has not shown that she relied on those alleged misrepresentations to her detriment because Cao did not make any payments of amounts she disputed within the limitations period. Accordingly, Cao's objections to the dismissal of her fraud claims are **OVERRULED**. The defendants' motions for judgment on the pleadings with regard to Cao's fraud claims are **GRANTED**. Alternatively, the court finds no error in the Magistrate Judge's determination that the latest Cao's fraud claims could have accrued

is March 16, 2012, which means her fraud claims arose outside of the limitations period, and that Cao has not presented evidence to satisfy all the elements of the fraud claims against MTGLQ&S. *See* Dkt. 160.

**E.     Usury**

The Magistrate Judge found that Cao was barred from bringing a usury claim for any conduct that occurred prior to December 28, 2012.  Dkt. 160.  The Magistrate Judge correctly noted that under Texas law a usury claim requires proof that the plaintiff actually paid a usurious rate.  *Id.*  She noted that the record reflected that the plaintiff had not made any payments that were accepted by any of the defendants since at least September 6, 2012 (citing Dkt. 58-3 at 32).  *Id.* She also found that the plaintiff did not give the defendants notice of the nature and amount of violation 61 days before filing suit in state court, as required to bring a usury claim in Texas.  *Id.*

In her objections, Cao argues that "payment" occurred when MTGLQ foreclosed on her homestead in May 2019 and kept all the proceeds.  Dkt. 166-1.  She additionally contends she "sent fair-notice(s) and the deadline from Defendants' correction is long overdue."  *Id.* (citing Dkt. 59-2 at 16–29, Dkt. 1-4, Ex. 7, 8 at 43–47).  Her cited evidence indicates she advised various lenders or servicers that she would like itemized invoices of the charges and generally that she did not understand all of the various fees for which she was being charged.  *See, e.g.*, Dkt. 59-2 at 29. This is not the type of "notice" contemplated by the statute.  *See* Tex. Fin. Code Ann. § 305.006(b) (stating that the "obligor shall give the creditor written notice stating in reasonable detail the nature and amount of the violation"); *see also Sotelo v. Interstate Fin. Corp.*, 224 S.W.3d 517, 522 (Tex. App.—El Paso 2007, no pet.) (noting the legislature's intention for a "safe harbor" "method of correction *before the debtor files suit*").  Because Cao has not shown she provided the defendants

with written notice stating in reasonable detail the nature and amount of the violation to the usury statute, her claims against the defendants must fail.

Moreover, as MTGLQ&S point out in their response to Cao's objections, Cao has not shown that the value of the property exceeded the amount of debt at the time of the foreclosure sale. Dkt. 170. Cao has the burden of showing there is an issue of material fact that she paid more in interest than allowed by law. While she attempts to show certain charges for late fees from many years ago that she alleges are greater than allowed under her contract and there are allegations that she was charged more interest than the modification agreement allowed, she has not provided the court with any evidence that there were overages in the sale price to which she is entitled. She has therefore not met her burden of showing there is specific evidence that demonstrates an issue of material fact on her usury claims.

Cao's objections to the M&R relating to her usury claims are **OVERRULED**. The defendants' motions for summary judgment on Cao's usury claims are **GRANTED**.

### F.      Civil Theft and Money Had and Received

The Magistrate Judge construed Cao's civil theft claim as being brought under the TTLA, and both the TTLA and the money had and received claims have a two-year statute of limitations. Dkt. 160. Since Cao had not even attempted to make a payment since February 11, 2013, and no defendant had accepted a payment since September 6, 2012, the Magistrate Judge found these claims time barred to the extent they were based on stolen payments. *Id.* She found, however, that to the extent the claims were based on proceeds of the foreclosure sale, they are not time barred. *Id.* She noted that if the defendants demanded amounts in excess of what the plaintiff owed, the foreclosure of the property would be unlawful and the plaintiff may be entitled to some of the surplus proceeds from the foreclosure sale. *Id.*

23

Cao argues that the defendants' allegation that she defaulted in June 2012 is "devoid of any evidence" and there is no issue of fact that "Defendants consistently made demands that were all in excess of the $1,567.55 that Plaintiff owed in accordance with the loan contract."[10] Dkt. 166-1. She contends that all of the defendants knowingly and unlawfully appropriated and took title of her property with the intent to deprive her of the property and equity and MTGLQ's foreclosure was unlawful, their title invalid, and their possession of the surplus proceeds illegal. *Id.* She then again argues that the defendants have provided no evidence that a genuine dispute exists. *Id.* Cao's objections to the Magistrate Judge's recommendations are **OVERRULED**. As the Magistrate Judge noted, Cao has provided no evidence that BC&C accepted any money within the limitations period. Thus, BC&C's motion for summary judgment with regard to Cao's money had and received claim is **GRANTED**.

The court now turns to the claim the Magistrate Judge did not dismiss relating to money had and received from the foreclosure sale. MTGLQ&S argue that there is no evidence that any surplus funds from the foreclosure sale exist and, regardless, the plaintiff cannot come forward with evidence to support this claim because the rights and obligations of the parties are governed by a contract. Dkt. 165. MTGLQ&S argue that an express contract precludes equitable relief under a money had and received theory. *Id.*

The court agrees with MTGLQ&S. In *TIB—The Independent BankersBank v. Canyon Community Bank*, 13 F. Supp. 3d 661, 671 (N.D. Tex. 2014), the court explained that "when a

---

[10] This is the amount of principal and interest, and what Cao's payment would be if she made it on time every month and did not need to pay any escrow. However, the record demonstrates that Cao was very frequently late on her payments, and she does not dispute that the modification agreement allows a five percent late charge. The agreement also states that the "payment amount does not include additional amounts which may also be due for the payment of taxes and insurance premiums." Dkt. 145-4. She was also charged other fees related to her default, which were permitted by her loan documents. Her Deed of Trust informs that the lender may charge her for services performed in connection with her default, including attorneys' fees, as well as for the purpose of protecting the lender's interest in the property. Dkt. 145-3.

valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." "The existence of a contract forecloses equitable relief under a 'money had and received' theory." *Tex Star Motors, Inc. v. Regal Finance Co., Ltd.*, 401 S.W.3d 190, 202 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Here, the contract should govern the amounts that the plaintiff claims were demanded in excess of the terms of the contract, which are the amounts she claims impact the amount due from the foreclosure sale. Accordingly, Cao's remedy lies in the terms of the contract, not an equitable form of relief. MTGLQ&S's objection to the recommendation that the court should deny its motion for judgment on the pleadings on the money had and received claim is **SUSTAINED**, and its motion for judgment on the pleadings on the money had and received claim is **GRANTED**. Alternatively, Cao has provided no evidence that there were excess proceeds from the foreclosure sale. Thus, summary judgment on the money had and received claim is warranted.

With regard to the TTLA claim, MTGLQ&S point out that MTGLQ's title to the Property was obtained via a lawful foreclosure sale authorized by the terms of the note and deed of trust, and there is no evidence that there was a defect in the foreclosure sale or a right by Cao to rescind the sale, which would be necessary in the statutory theft context. Dkt. 165. They additionally contend that there is no evidence of intent to take property belonging to Cao and no evidence of damages to Cao, who MTGLQ&S contend has resided in the subject property for years without making loan payments. *Id.*

BC&C similarly argue that there is no basis in law of fact to support the Magistrate Judge's recommendation that Cao's civil theft claim survives BC&C's dispositive motions. Dkt. 167. They note that the Magistrate Judge found that demands for overpayment that allegedly brought about MTGLQ&S's foreclosure could be actionable if the foreclosure was unlawful. *Id.* BC&C

point out, however, that the Magistrate Judge also found that the wrongful foreclosure claim fails, and Cao has not offered any evidence to show that she suffered any damages as a result of an alleged civil theft.  *Id.*

The Magistrate Judge indeed determined that the wrongful foreclosure claim fails because Cao did not bring forth an issue of material fact that the $463,180.05 sale price was grossly inadequate, which is the standard required for a wrongful foreclosure claim.  *See* Dkt. 160.  The Magistrate Judge recommended denying the motion for summary judgment on the TTLA claim because there is a fact issue regarding whether the defendants demanded wrongful overpayments from Cao.  *Id.*  She noted that the foreclosure was "unlawful" if the defendants demanded more from Cao than she owed and then foreclosed because she refused to pay that amount.  *Id.*  The Magistrate Judge also found that if the amounts demanded were incorrect, then Cao is entitled to some of the surplus proceeds from the foreclosure sale, and the TTLA claim survives as to those funds.  *Id.*

While BC&C's point that the foreclosure was not "unlawful" is well taken, there is no indication that the standard for a wrongful foreclosure claim—a grossly inadequate sale price—is the same standard that would be considered "unlawful" in a TTLA claim based on bringing about the foreclosure by demanding incorrect fees.  Under the TTLA, "theft" means "unlawfully appropriating property or unlawfully obtaining services" described in various section of the Texas Penal Code, including section 31.03.  Tex. Civ. Prac. & Remedies Code § 134.002.  A person who commits theft is liable for the damages that result.  *Id.* § 134.003.  Under section 31.03 of the Texas Penal Code, a "person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Penal Code Ann. § 31.03.  Unlawful appropriation includes appropriation without the owner's effective consent.  *Id.*  The intent can be inferred from

surrounding circumstances, but it must "exist at the time of the taking." *In re Cowin*, 492 B.R. 858, 896 (S.D. Tex. Bankr. 2013) (Bohm, J.).  Thus, the standard for "unlawful" is different for wrongful foreclosure and TTLA claims.

However, Cao's TTLA claims fail anyway.  Cao has not provided an analysis of any evidence that demonstrates that the sale price was in excess of what she would have owed had the correct fees and interest charges been applied.  Moreover, there is no indication that she was overcharged during the limitations period. *See*, Part I, *supra*.  She must present an issue of material fact as to her damages.  Because she has failed to do so, the court finds that the defendants' objections relating to the Magistrate Judge's recommendation that the motion to dismiss the TTLA claim be denied are **SUSTAINED**.  Cao's arguments that the court should not dismiss the TTLA claims relating to events prior to the foreclosure are **OVERRULED**.  The defendants' motions for summary judgment on the TTLA claims are **GRANTED**, and Cao's TTLA claims are **DISMISSED WITH PREJUDICE**.

## G.     TDCA and FDCPA

The Magistrate Judge found that any FDCPA claims based on conduct occurring prior to December 28, 2015, are time barred, and any TDCA violations that occurred prior to December 28, 2014, are time barred.  Dkt. 160.  The Magistrate Judge found that Cao's allegations in the third amended complaint with regard to the TDCA and the FDCPA were "vague," as the defendants contended, but she disagreed with the defendants' argument that the TDCA and FDCPA claims should be dismissed for failure to state a claim, noting that the plaintiff is pro se and her allegations are therefore entitled to liberal construction.  *Id.*  The Magistrate Judge also found that the economic loss rule did not preclude recovery under the TDCA and FDCPA, relying

on *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015).[11]  *Id.*  She ultimately determined Cao's evidence of the attempt to collect interest and fees that were in violation of the contractual terms supported claims under both the TDCA and the FDCPA.  *Id.*  She noted that the evidence that Cao provided indicating that she was overcharged at least once in January 2011 in violation her loan modification agreement is sufficient to support a finding that the parties to the loan continued to demand amounts Cao potentially did not owe under the terms of the loan.  *Id.*

In her objections, Cao argues that BSI, Carrington, and Selene failed to present any evidence to support their allegation of Cao's June 2012 default and that no fact issue exists that any and all attempts to collect amounts that exceeded the single monthly installments were clear violations of the TDCA and FDCPA.  Dkt. 166-1.  She cites to exhibits that she contends indicate that BSI, Carrington, and Selene attempted to collect "amounts that egregiously exceeded that single monthly installment, prior to and after December 28, 2014 and December 28, 2015."  *Id.* (citing Dkt. 58-2, Ex. E at 2–58, Dkt. 87-3, Ex. 8 at 25–34, Dkt. 115, Ex. 6-8 at 55–61).

MTGLQ&S argue that even construing the claims liberally, Cao fails to state a claim that gave them fair notice of what provisions of the TDCA and FDCPA they allegedly violated. Dkt. 165.  While acknowledging Cao is pro se, they point out that Cao had multiple chances to amend her complaint and still failed to even put the defendants on notice as to what claims she

---

[11] In *McCaig*, the Fifth Circuit noted that a "'party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.'"  788 F.3d at 475 (quoting *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)).  The court found, however, that if the *McCaig* defendant violated the TDCA, it could be held liable "even if there are contracts between the parties, and even if [the defendant's] prohibited conduct also amounts to contractual breach."  *Id.*  It held that a "statutory offender will not be shielded by showing its violation also violated a contract."  *Id.* Otherwise, "[p]ermitting debt collectors to cast the absence of a contractual right as a mere contractual breach triggering the economic loss rule would fundamentally disrupt the statutory scheme."  *Id.*  "[I]f a particular duty is defined in both a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply."  *Id.*

28

was asserting.  *Id.*  They note that the Magistrate Judge "inserted or manufactured" specific unstated provisions of both statutes and recommended that this court ignore the pleading deficiencies simply because Cao is pro se.  *Id.*

BC&C argue that the FDCPA claim should be dismissed because Cao failed to sufficiently state a claim under the FDCPA even though she has had multiple opportunities to amend her complaint.  Dkt. 167.  They make the same argument with regard to the TDCA, and contend that if the court adopts the M&R's construction of the claims, they will have been deprived of an opportunity to substantively address the claim while being given fair notice.  *Id.*  BC&C additionally argue that the M&R incorrectly allows the TDCA claim to survive notwithstanding Cao's failure to present evidence to support the elements of the claim.  *Id.*

The Magistrate Judge construed the plaintiff's complaint liberally to state claims under section 392.303(a)(2) of the Texas Finance Code (TDCA) and section 1692e(2)(A) of 15 U.S.C. (FDCPA).  *See* Dkt. 160.  Though the plaintiff did not state these specific provisions in her third amended complaint, she did assert that the defendants attempted to collect interest and fees to which they were not entitled.  *See id.* (outlining the allegations and evidence presented by the plaintiff regarding the interest and fees charged).  Under Texas Finance Code section 392.303(a)(2), a "debt collector may not use unfair or unconscionable means that employ" the practice of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(a)(2).  To assert a claim under the 15 U.S.C. § 1692e(2)(A), a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing," falsely representing "the

character, amount, or legal status of any debt" is a violation of the section. 15 U.S.C.
§ 1692e(2)(A). Even construing the pleadings liberally, the court is not convinced that the
allegations in the complaint that the defendants violated the TDCA and FDCPA in combination
with the allegations that the defendants attempted to collect interest and fees to which they were
not entitled is sufficient to plausibly state a claim against the defendants under the TDCA because
Cao does not discuss what "unfair or unconscionable means" were used other than that, according
to Cao, the defendants were attempting to collect the incorrect amounts. The FDCPA claims, on
the other hand, only seem to require attempting to collect an incorrect amount.

The defendants argue that, in addition to the pleading issues, Cao does not have any
evidence to support her TCPA and FDCPA claims. Dkts. 165, 167. MTGLQ&S point out that
the servicing was transferred to Selene on August 2, 2018, and Selene sent Cao a notice of default
and intent to accelerate on September 27, 2018. Dkt. 165. It sent her another notice of default and
intent to accelerate on November 15, 2018. MTGLQ&S argue that there is no evidence that either
notice contained incorrect information and no evidence that Cao cured the defaults or even
attempted to do so. *Id.* MTGLQ&S thus argue that the charges assessed by Selene were authorized
on the written loan documents. *Id.*

While Cao has provided some documents that she contends show irregularities from many
years ago, the record from the 2011 transactions does not support her contention that the amounts
requested within the limitations period were incorrect, and Cao's third amended complaint
contains no allegations that that BC&C or MTGLQ&S used "unfair or unconscionable means" to
collect the debts. *See* Dkt. 115. Cao also fails to point to specifically what representations she
claims are deceptive. *See, e.g.*, Dkt. 139 at 60–62 (generally discussing "inaccurate and
misrepresented amounts that Plaintiff disputed in writing," but failing to provide the letters of

dispute or, if they are in the record, point to them, and failing to identify exactly what amounts which defendants allegedly misrepresented).  Instead, she points generally to documents that do not support her claims of misrepresentation and provides conclusory allegations without submitting affidavits.  *See id.* (Cao's motion for summary judgment) at 61 ("Defendants BSI and CMS have gone to the unconscionable extent to call and harass Plaintiff's mother, sister, brother and distant aunt, all of whom has nothing to do with Plaintiff's property and loan."); *see* Background, *supra* (pointing out that the documents do not support the contention that BSI overcharged interest after the modification; Dkt. 161-1 (Cao's objections) at 32 (pointing to multiple documents as evidence that the defendants attempted to collect amounts that "egregiously exceeded the monthly installment" without explaining why the amounts requested are incorrect).[12] Cao has not met her burden of demonstrating that she has evidence that there is an issue of material fact that the defendants attempted to collect debt that Cao did not owe in violation of the TDCA or the FDCPA.  Accordingly, her objections to the M&R are **OVERRULED**, BC&C's and MTGLQ&S's objections are **OVERRULED IN PART** and **SUSTAINED IN PART**, and their motions for summary judgment are **GRANTED**.  The TDCA and FDCPA claims are **DISMISSED WITH PREJUDICE**.

---

[12] Cao cites the following documents for her argument that the defendants attempted to collect amounts that "egregiously exceeded that single monthly installment during the limitations period: Dkt. 58-2, Ex. E at 2-58; Dkt. 87-3, Ex. 8 at 25-34; Dkt. 115, Ex. 6-8 at 55-61.  The documents at Exhibit E of docket entry 58 are over fifty pages of payment reminders, notices of default, FDCPA notices, and other correspondence.  The document at Exhibit 8 or docket entry 87 are nine pages of bills, reinstatement quotes, and an FDCPA notice.  The six pages cited from docket entry 115, which are exhibits to the third amended complaint, are a notice of default and intent to accelerate and some post-acceleration statements.  While the court agrees the late charges listed on some of these documents are substantial, it is clear from the record that Cao had late charges stemming back from ten years ago that she never paid and she has not made a payment that was accepted in years.  As the plaintiff, Cao must show the court more than that the amounts charged are substantial—she has the burden of demonstrating there is an issue of material fact that the amounts charged are incorrect.

H.      **Quiet Title**

As the Magistrate Judge noted, the elements of a suit to quiet title are "(1) the plaintiff has

an interest in a specific property; (2) title to the property is affected by the defendant's claim; and

(3) the defendant's claim, although facially valid, is invalid or unenforceable." *Roberson v. Odom*,

529 S.W.3d 498, 502 (Tex. App.—Texarkana 2017, no pet.).  "The purpose of a suit to quiet title

is to remove an encumbrance or defect from a plaintiff's title to the property." *Id.*  The Magistrate

Judge found that MTGLQ was the only defendant who was claiming title and recommended

dismissal of the claim against all the other defendants.  Dkt. 160.  She found there was evidence

supporting the first two elements of the claim against MTGLQ, and she noted that if MTGLQ

obtained title by presenting inaccurate payment demands, its title is not valid.  *Id.*  She opined that

it would be illogical for MTGLQ to obtain valid title by demanding payments beyond the amounts

permitted by the loan.  *Id.*  MTGLQ objects to this finding, arguing that the Substitute Trustee's

Deed is *prima facie* evidence of a valid sale, and the burden shifted to Cao to provide grounds for

setting aside the sale.  Dkt. 165.

Under Texas law, a "foreclosure sale is reviewed with a presumption that all prerequisites

to the sale have been performed and that provisions for waiver and notice are valid." *Deposit Ins.*

*Bridge Bank, N.A., Dall. v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston [1st Dist.] 1991,

no writ).  However, the "presumption of the validity of a foreclosure sale is not conclusive and

may be rebutted." *Id.* at 267; *see Garza v. J.P. Morgan*, No. 1:17cv82, 2017 WL 6513655, at *5

(S.D. Tex. Oct. 25, 2017) (Torteya, M.J.) (citing *Deposit Ins. Bridge Bank* to support a finding that

there was no issue of fact to support a wrongful foreclosure claim when the plaintiffs did not rebut

the recitals in the Substitute Trustee's Deed with competent evidence).

MTGLQ&S provides an exhibit that was delivered to Cao via certified mail. Dkt. 135, Ex. 1-G. It is a letter from a firm representing Selene, and it advises that the note had been accelerated and the property scheduled for foreclosure. *Id.* The notice of acceleration and trustee's sale is attached to this exhibit. *See id.* It lists MTGLQ as the current mortgagee and Selene as the servicer. *Id.* It states that the sale "shall be subject to any legal impediments to the sale of the Property and any exceptions referenced in the Deed of Trust." *Id.* The Magistrate Judge found there was a question of material fact regarding whether MTGLQ demanded payments beyond what was permitted by the loan, which, even if there is a presumption that the foreclosure sale is valid, would overcome the presumption. However, as noted above, the plaintiff does not present competent evidence that demonstrates there is an issue of material fact that the defendants charged her a greater percentage of the principal and interest as a late fee than the contract permitted. There is now evidence in the record showing that the amount in question in January 2011 was a carried over fee (not a late fee) from the previous servicer, and the evidence from the previous servicer is not sufficient to create an issue of material fact that the plaintiff was charged more for late fees than permissible. Accordingly, there is no evidence of a material fact to overcome the presumption that the amounts in the Substitute Trustee's Deed were valid. MTGLQ&S's objections are **SUSTAINED**. Cao's objections are **OVERRULED**. The defendants' motions for summary judgment on the suit to quiet title are **GRANTED**.

## I.    Texas Civil Practices and Remedies Code Section 16.035

The Magistrate Judge noted that section 16.035 of the Texas Civil Practices and Remedies Code relates to the statute of limitations for real property and is not a cause of action. Dkt. 160. She recommended dismissal of Cao's "claims" under this statute. *Id.* In her objections, Cao discusses section 16.035 under her argument that the statute of limitations should apply to the

defendants as well as to her.  *See* Dkt. 166-1.  The original acceleration and notice of foreclosure was rescinded in this case and then resent prior to foreclosure, so this is not a relevant argument. *See* Dkt. 160 (setting forth the timeline in this case in detail).  To the extent Cao is objecting to the Magistrate Judge's recommendation of dismissal of any "claims" under section 16.035, that objection is **OVERRULED**.  To the extent Cao attempted to assert claims in her third amended complaint under section 16.035, those claims are **DISMISSED WITH PREJUDICE**.

## J.    Conspiracy

Turning to Cao's conspiracy claims, the Magistrate Judge found that Cao did not allege a "meeting of the minds" and there was no evidence creating an issue of material fact that the defendants agreed to "steal" Cao's property.   Dkt. 160.   The Magistrate Judge therefore recommended that Cao's conspiracy claim be dismissed.  *Id.* (setting forth the elements of a civil conspiracy, which require a "meeting of the minds").  Cao objects to these findings, arguing that it is "exceedingly improbable that multiple parties, in combination, would act in tandem and successively without pause, unless it was a meeting of the minds." Dkt. 166-1.  She further asserts that the Stanwich Asset Acceptance Company corporate documents illustrate a meeting of the minds and discusses the fees associated with managing a mortgage and how upon default members of a company can swap fees and charges.  *Id.* (citing Dkt. 135, Exs. 5–6).  The defendants do not address these arguments in their responses to Cao's objections.  Dkts. 168, 170.  However, neither argument convinces the court that the evidence creates an issue of material fact that the defendants conspired to steal Cao's property.   Accordingly, Cao's objections to Magistrate Judge's recommendation that the conspiracy claims be dismissed are **OVERRULED** and her conspiracy claims are **DISMISSED WITH PREJUDICE** for failure to state a claim and, alternatively, for failing to provide evidence that there is an issue of material fact.

**K.**     **Texas Civil Practices and Remedies Code Section 12.002**

Section 12.002 of the Texas Civil Practices and Remedies Code relates to a fraudulent lien or claim against real property.  *See* Dkt. 160 (explaining Texas law).  The Magistrate Judge noted that Cao argued that the notices of trustee's sales and the trustee's deed were fraudulent documents within the purview of section 12.002.  *Id.*  She pointed out that it was unclear under Texas law if these documents are even the types of documents the statute contemplates, but that, regardless, they did not state an amount and merely indicated, truthfully, that the plaintiff's property was encumbered by a lien.  *Id.*  She determined that Cao had not provided any evidence that any part of the documents was fraudulent and, thus, found the plaintiff failed to state a claim under section 12.002.  *Id.*

Cao objects to these findings.  Dkt. 166-1.  She contends that BSI, Christiana, and Selene did not provide evidence in support of their allegation that Cao defaulted in June 2012 and they had no rights to foreclose.  *Id.*  She additionally argues that BSI, Christiana, Selene, and MTGLQ violated section 12.002 by filing fraudulent notices of a trustee's sale when they had no authority to exercise the power of sale and no authority to make any claim on Cao's property.  *Id.*

The court is not convinced by Cao's objections.  The records Cao submitted show that Cao has not made a payment for many years.  The defendants had authority to exercise the power of sale on the property.  Cao's objection is **OVERRULED**.  Cao's claims under section 12.002 are **DISMISSED WITH PREJUDICE** for failure to state a claim.

**L.**     **Negligence and Gross Negligence Per Se**

The Magistrate Judge noted that Cao based her negligence per se and gross negligence per se claims on section 12.002.  Dkt. 160.  Because the section 12.002 claims failed, the Magistrate Judge recommended that the negligence claims also be dismissed.  *Id.*

Cao objects, arguing that the defendants violated section 12.002 by filing the allegedly fraudulent documents in the public records, and this violation constitutes negligence per se. Dkt. 166-1.  She also argues that BSI Christiana, Selene, and MTGLQ did not provide evidence to the contrary that their notices of trustee's sale and trustee's deed constitute fraudulent claims.  *Id.* Here, Cao had the burden of stating a claim upon which relief could be granted, and she had three opportunities to amend her complaint to assert a viable claim.  She has failed to do so.  Her objections are **OVERRULED**, and the negligence and gross negligence per se claims are **DISMISSED WITH PREJUDICE**.

## M.     Fraudulent Transfers Under the USC and/or Texas Business and Com. Code

Cao contends in her third amended complaint that the defendants transferred the deed of trust during the pendency of this lawsuit "with the purpose of circumventing any recovery which might be had in Plaintiff's pending suit."  Dkt. 115.  She captioned this claim, "Fraudulent Transfers Under USC and/or Tex. Bus. & Com. Code."  *Id.*  The Magistrate Judge construed the fraudulent transfer claim to be asserted under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Comm. Code section 24.001 et seq. Dkt. 160.  She found, however, that the plaintiff could not assert a claim because TUFTA relates to a debtor's fraudulent transfer of assets, and Cao is alleging some type of fraudulent transfer by the creditors.  *Id.*

In her objections, Cao states that TUFTA defines "'creditor'" as "'a person . . . who has a claim.'"  Dkt. 166-1 (quoting Tex. Bus. & Commerce Code Ann. § 24.002).  She argues that she is a "creditor" under the statute because she has a claim against the defendants as she sent notices and demands for payment and/or credit and had commenced proceedings against them for payment and property, and is thus a creditor.  *Id.*  She argues that the defendants knew transferring and assigning her mortgage would delay relief and obstruct justice as well as complicate the ongoing

proceedings. *Id.* She also argues that the defendants provided no evidence that the transfers were legal. *Id.*

While Cao's argument that she is a creditor is creative, a "claim" under "TUFTA" is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, equitable, secured, or unsecured." Tex. Bus. & Commerce Code Ann. § 24.002. Cao has not shown that there is an issue of material fact that she has a right to payment or property for all the reasons discussed above. Accordingly, Cao's objection to the Magistrate Judge's recommendation that her fraudulent transfer claims be dismissed is **OVERRULED**. The defendants' motions to dismiss the fraudulent transfer claims are **GRANTED**. Cao's fraudulent transfer claims are **DISMISSED WITH PREJUDICE**.

## N.    Remaining Claims

The Magistrate Judge recommended that Cao's wrongful foreclosure claims be dismissed because Cao offered no evidence that the sale price was "grossly inadequate." Dkt. 160. No parties objected to this finding, and the court finds no clear error. Accordingly, the court **ADOPTS** the M&R in full as it relates to the wrongful foreclosure claims. The defendants' motion for summary judgment on these claims is **GRANTED**, and they are **DISMISSED WITH PREJUDICE.**

The Magistrate Judge recommended that Cao's conversion claims be dismissed because Texas does not recognize conversion claims for real property. Dkt. 160. No party objected to that conclusion, and the court finds no clear error in the finding. Accordingly, the court **ADOPTS** the M&R in full as it relates to the conversion claim. The defendants' motions for judgment on the

pleadings on the conversion claims are **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE**.

The Magistrate Judge also found that there is no evidence demonstrating how Stanwich Mortgage Acquisition Co. Inc. ("Stanwich") is involved in the dispute and sua sponte determined that Stanwich should be dismissed from the lawsuit.  *Id.*  No parties objected to this finding.  The court finds that dismissal is appropriate because (1) Cao has had an opportunity to respond to the recommendation to dismiss Stanwich and has posed no objection; and (2) there is no clear error in the Magistrate Judge's determination that nothing in this case indicates Stanwich is involved.  Accordingly, any claims Cao asserts against Stanwich in her third amended complaint are **DISMISSED WITH PREJUDICE**.

The Magistrate Judge noted that Cao has asked for a preliminary injunction to prevent the foreclosure sale, but Cao already "had her day in court and failed to persuade the court that she was entitled to a preliminary injunction" before the foreclosure sale occurred.  *Id.*  She thus recommended that the still pending request for a preliminary injunction be denied.  *Id.*  No party objects to this recommendation, and the court finds no clear error.  Accordingly, the court **ADOPTS** the M&R as it relates to Cao's request for a preliminary injunction.  Cao's request for a preliminary injunction is **DENIED**.

## VI. REMAINING MOTIONS

The Magistrate Judge recommended that Cao's motion for summary judgment on all of her claims (Dkt. 139) be denied, and the court, after having conducted a *de novo* review, agrees that Cao has not proven all of the elements of any of her claims and has, in fact, failed to either state a claim or provide an issue of material fact with regard to any of her claims.  Accordingly, the

M&R's recommendations with regard to Cao's motion for summary judgment are **ADOPTED**, and Cao's motion for summary judgment as to all of her claims is **DENIED**.

The Magistrate Judge also made several rulings with respect to nondispositive motions, and none of the parties have objected to these rulings.  These rulings are not clearly erroneous or contrary to law.

### VII. CONCLUSION

The M&R (Dkt. 160) is **ADOPTED IN PART**.

BC&C's motion for judgment on the pleadings at docket entry 132 is **DENIED AS MOOT**.

Cao's motion for summary judgment and motion for preliminary injunction at docket entry 140 is also **DENIED AS MOOT**.

Cao's motion for summary judgment on her affirmative claims (Dkt. 139) is **DENIED**.

Cao's objections to the M&R (Dkt. 166-1) are all **OVERRULED**.

BC&C's objection to the M&R (Dkt. 167) with regard to Cao's TTLA claim is **SUSTAINED**, and its objection with regard to the TDCA and FDCPA claims is **SUSTAINED IN PART AND OVERRULED IN PART**.

MTGLQ&S's objections to the M&R (Dkt. 165) regarding the money had and received, TTLA, and quiet title claims are **SUSTAINED**; its objection to the M&R with regard to the TDCA and FDCPA claims is **SUSTAINED IN PART AND OVERRULED IN PART**.

BC&C's and MTGLQ&S's motions for summary judgment (Dkts. 135, 136) on Cao's breach of contract, duress, usury, TTLA, TDCA, FDCPA, quiet title, and wrongful foreclosure claims are **GRANTED**.  Those claims are **DISMISSED WITH PREJUDICE**.

BC&C and MTGLQ&S's motions for judgment on the pleadings (Dkts. 133, 135) on Cao's fraud, conspiracy, conversion, Texas Civil Practices & Remedies Code § 12.002, negligence and gross negligence per se, and fraudulent transfer claims are **GRANTED**.  Those claims are **DISMISSED WITH PREJUDICE**.

BC&C's motion for summary judgment (Dkt. 136) on the money had and received claim is **GRANTED**.  MTGLQ&S's motion for judgment on the pleadings (Dkt. 135) on Cao's money had and received claim is **GRANTED**.  Cao's money had and received claims are **DISMISSED WITH PREJUDICE**.

To the extent Cao attempted to assert claims in her third amended complaint under section 16.035, those claims are **DISMISSED WITH PREJUDICE**.

All claims against Stanwich are **DISMISSED WITH PREJUDICE**.

Cao's request for a preliminary injunction (Dkt. 139) is **DENIED**.

The court will issue a final judgment in favor of the defendants concurrently with this memorandum opinion and order.

Signed at Houston, Texas on September 17, 2020.

Gray H. Miller
Senior United States District Judge